[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10678
_____

D.C. Docket No. 0:18-CR-60072-BB-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PETER ROBERT BOBAL,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 30, 2020)

Before WILLIAM PRYOR, Chief Judge, HULL and MARCUS, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether a district court plainly erred by

denying a criminal defendant's motion for a new trial and by imposing a restriction

on using a computer as a special condition of a lifetime term of supervised release. After a bifurcated trial, a jury convicted Peter Bobal of attempting to persuade a minor to engage in sexual activity and committing a felony involving a minor while required to register as a sex offender. Bobal's sentence included a lifetime term of supervised release, during which he could not use a computer except for work and with the permission of the district court. Bobal argues that the prosecutor misled the jury in her closing argument and that his computer restriction is unconstitutional in the light of *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017). We conclude that the prosecutor's closing argument was not improper. We also conclude that *Packingham* is distinguishable because Bobal's computer restriction does not extend beyond his term of supervised release, it is tailored to his offense, and he can obtain the district court's approval to use a computer for permissible reasons. We affirm.

## I. BACKGROUND

In October 2017, a 62-year-old woman living with her 18-year-old daughter in Hallandale Beach, Florida, found a note on her door. The note said something like "I think you're beautiful," although it was unclear whether the note was addressed to the woman or her daughter. It included a phone number but no name. The woman suspected that her neighbor, Peter Bobal, had left it. She asked her friend, a 60-year-old man, to call the number. He did, and he reached Bobal's

2

voicemail. The friend hung up without leaving a message, but a short time later he began receiving text messages from Bobal. Bobal wrote that he was a single male, and he asked the caller to text him back. The friend did not respond.

After continuing to ignore Bobal for a couple months, the friend decided to reply and to pose as a 14-year-old girl to see how Bobal would react. Bobal responded by asking if the girl's mother was single, and he said that he could talk with either the girl or her mother about anything. He continued texting the fictitious girl, and he eventually asked her to send him a picture. The man posing as the girl offered the excuse that he was at school, but he asked Bobal for a picture. Bobal responded by asking if he should send one of his face or of him naked. The man never answered, so Bobal sent a picture of his face. But after the man commented that Bobal had sent a picture of his face "instead of the other," Bobal sent the fictitious girl a picture of his penis. The man posing as the girl then contacted the Federal Bureau of Investigation and turned over copies of his text messages with Bobal.

A special agent of the Bureau assumed the identity of the fictitious 14-year-old girl. He exchanged numerous text messages with Bobal, many of which were sexual in nature. Eventually, Bobal and the special agent arranged to meet. When Bobal arrived at the agreed-upon meeting place, the special agent arrested him.

A federal grand jury indicted Bobal on two counts: using a facility and means of interstate commerce to knowingly attempt to persuade, induce, entice, and coerce a minor to engage in sexual activity, 18 U.S.C. § 2422(b), and committing a felony offense involving a minor after being required to register as a sex offender, *id.* § 2260A. Bobal had previously been convicted in Florida for using a computer to solicit a child to engage in sexual activity. At trial, Bobal stipulated to the second element of the second count: at the time of the alleged criminal misconduct, he was a registered sex offender.

The district court held a two-day, bifurcated jury trial. It did not inform the jury about the charge under section 2260A until after the jury convicted Bobal of the charge under section 2422(b). In the trial for the latter charge, neither the government nor Bobal called any witnesses or offered any evidence other than Bobal's stipulation.

The prosecutor gave a short closing argument in which she explained the two elements of section 2260A: first, the defendant committed a felony offense involving a minor, and second, the defendant was required to register as a sex offender at the time of the offense. She explained that Bobal's stipulation about being a registered sex offender satisfied the second element: "So the Defense is telling you: 'We stipulate that the Government proves Count 2. I was a registered sex offender. I was required to register as a sex offender.'" And the prosecutor then

4

asserted that the guilty verdict for section 2422(b) satisfied the first element of section 2260A. She concluded, "So the only verdict as to Count 2 is a verdict of guilty."

Bobal did not object to the prosecutor's statements, and he waived his own closing argument. The jury then convicted him of violating section 2260A.

Later that day, after the trial ended, Bobal moved the district court for a new trial on the second count. He argued that the prosecutor had misstated the law when she said that "the only verdict as to Count 2 is a verdict of guilty" because the jury was free to reevaluate the evidence as to the first count. The district court denied the motion.

The district court sentenced Bobal to 240 months of imprisonment followed by a lifetime term of supervised release. As a special condition of supervised release, it ordered that Bobal "shall not possess or use a computer that contains an internal, external or wireless modem without the prior approval of the Court." And it further ordered that Bobal "shall not possess or use any computer; except that [he] may, with the prior approval of the Court, use a computer in connection with authorized employment." Bobal did not object to these special conditions.

## II. STANDARD OF REVIEW

We review unpreserved issues for plain error. *United States v. Moran*, 573 F.3d 1132, 1137 (11th Cir. 2009); *United States v. Pendergraft*, 297 F.3d 1198,

5

1211 (11th Cir. 2002). We may reverse only if the error is plain, it affects substantial rights, and it "seriously affects the fairness, integrity, or public reputation of the judicial proceeding." *Pendergraft*, 297 F.3d at 1211. An error cannot be "plain" if "neither the Supreme Court nor this Court has ever resolved [the] issue, and other circuits are split on it." *United States v. Aguillard*, 217 F.3d 1319, 1321 (11th Cir. 2000).

## III. DISCUSSION

Bobal argues that the district court erred by denying his motion for a new trial and asks that we reverse his conviction for violating section 2260A. He also contends that the computer restriction is unconstitutional in the light of *Packingham*. Because Bobal did not contemporaneously object either to the prosecutor's closing argument or to his sentence, we review his arguments for plain error, and we reject them both.

*A. The District Court Correctly Denied Bobal's Motion for a New Trial.*

Bobal argues that the district court should have granted his motion for a new trial for the charge under section 2260A because the prosecutor made two misstatements during her closing argument. First, the prosecutor said that Bobal stipulated to the second count instead of just one element of that count. Second, she told the jury that "the only verdict as to Count 2 is a verdict of guilty" when the

6

jury was actually free to reevaluate the evidence for the first count and to reach an inconsistent verdict.

The prosecutor's closing argument will constitute misconduct only if it was improper and prejudiced the substantial rights of the defendant. *United States v. Taohim*, 817 F.3d 1215, 1224 (11th Cir. 2013). We assess the prejudicial effect of arguments by "evaluat[ing] them in the context of the trial as a whole and assess[ing] their probable impact on the jury. To warrant a new trial, there must be a reasonable probability that but for the remarks, the outcome would be different." *Id.* (internal quotation marks and citation omitted). We conclude that the district court did not err in denying Bobal's motion for a new trial because the prosecutor's statements were not improper and did not prejudicially affect Bobal's substantial rights.

In explaining Bobal's stipulation to the jury, the prosecutor, paraphrasing Bobal, said, "We stipulate that the Government proves Count 2," and on appeal, the government concedes that this statement was an "isolated slip of the tongue." But, during the trial, the prosecutor immediately followed that "slip" with, "I was a registered sex offender. I was required to register as a sex offender." From the full context of the quote, a reasonable juror would have understood the prosecutor to contend that Bobal had stipulated to only one element of section 2260A—that he

7

was required to register as a sex offender at the time of the offense—not the entire count.

The prosecutor's statement that "the only verdict as to Count 2 is a verdict of guilty" was clearly an argument meant to persuade the jury, not an instruction as to how it must vote. We allow lawyers to make "colorful and perhaps flamboyant remarks if they relate to the evidence adduced at trial," *United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997) (internal quotation marks omitted), and the prosecutor's remarks conveyed nothing more than elementary logic. Bobal's stipulation that he was a registered sex offender satisfied one of the two elements of section 2260A. His conviction for violating section 2422(b)—delivered earlier that day by the exact same jury—satisfied the other. Because Bobal satisfied both elements, he was necessarily guilty of violating section 2260A. To be sure, the jury could have rendered an inconsistent verdict. But "[w]hile we recognize that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath." *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983).

Neither of the prosecutor's statements was improper. But even if they were improper, "statements and arguments of counsel are not evidence, [and] improper statements can be rectified by the district court's instruction to the jury that only the evidence in the case be considered." *United States v. Smith*, 918 F.2d 1551,

8

1562 (11th Cir. 1990). Here, the district court twice instructed the jury that the lawyers' statements were not evidence. So even if there were something wrong with the prosecutor's closing argument, the district court cured the problem, and the prosecutor's statements do not warrant a new trial. We affirm Bobal's conviction for violating section 2260A.

## B.  A Restriction on Computer Usage as a Special Condition of a Lifetime Term of Supervised Release Is Not Plainly Unconstitutional.

Bobal next challenges the special condition of his supervised release that prohibits him from using a computer except for work and with the prior permission of the district court. He contends that this restriction is unconstitutional. But our precedents foreclose his argument.

A district court does not commit plain error by imposing a computer restriction as a special condition of supervised release, even if the term of supervised release is life. We held in *United States v. Zinn* that a limited restriction on a sex offender's ability to use the internet while on a three-year period of supervised release was "a necessary and reasonable condition of supervised release" that did not burden the offender's rights under the First Amendment. 321 F.3d 1084, 1086, 1093 (11th Cir. 2003). Such restrictions are reasonably related to legitimate sentencing considerations, namely "the need to protect both the public and sex offenders themselves from . . . potential abuses" of the internet. *Id.* at 1093. And computer restrictions are not overly broad when a sex offender on

9

supervised release can "still use the Internet for valid purposes by obtaining his probation officer's prior permission." *Id.* Later, in *United States v. Carpenter*, we held that a district court did not plainly err by imposing a computer restriction as a special condition of supervised release for a period of life. 803 F.3d 1224, 1239–40 (11th Cir. 2015).

Bobal contends that *Carpenter* does not help us to resolve this appeal, but we disagree. To be sure, the issue we addressed in *Carpenter* was whether a computer restriction as a special condition of a lifetime period of supervised release was unreasonable, not whether it violated the First Amendment. *Id.* at 1228. We also reached our conclusion in *Carpenter* in part because, even if there was any error in the length of the restriction, Carpenter invited it by asking the district court to sentence him to a lifetime period of supervised release. *Id.* at 1239. But we also stated that because "no case of the Supreme Court or this Court says that a condition like this one cannot be imposed . . . there can be no plain error." *Id.*

Bobal argues that the Supreme Court abrogated our precedents in *Packingham v. North Carolina*, when it held that a North Carolina law prohibiting registered sex offenders from accessing social networking websites that permitted children to be present violated the First Amendment, 137 S. Ct. at 1733, 1738, but *Packingham* is distinguishable for at least three reasons. First, the state law in *Packingham* restricted sex offenders even after they had completed their sentences.

10

*Id.* at 1737. Bobal's computer restriction, by contrast, is a special condition of his supervised release and does not extend beyond his sentence. Second, the state law in *Packingham* applied to all registered sex offenders, not only those who had used a computer or some other means of electronic communication to commit their offenses. 137 S. Ct. at 1733. The Supreme Court explained that it was not holding that the First Amendment bars the enactment of "more specific laws than the one at issue." *Id.* at 1737. Indeed, the Court "assumed that the First Amendment permits a State to enact specific, narrowly tailored laws that prohibit a sex offender from engaging in conduct that often presages a sexual crime, like contacting a minor or using a website to gather information about a minor." *Id.* Bobal used an electronic device to attempt to persuade a minor with whom he had never communicated in person to have sex with him. His computer restriction prevents him from engaging in activity that could result in his repeating that offense. Third, unlike the state law in *Packingham*, Bobal's computer restriction is not a "complete bar to the exercise of [his] First Amendment rights." *Id.* at 1738. Instead, it allows Bobal to obtain court permission to use a computer in connection with employment. And Bobal can also ask the district court to modify the terms of his supervised release for other reasons. *See* 18 U.S.C. § 3583(e)(2); Fed. R. Crim. P. 32.1(c). The computer restriction does not leave Bobal without recourse to protect his First Amendment rights.

Bobal urges us to adopt a more sweeping interpretation of *Packingham*. He cites a parenthetical sentence from the opinion, where the Supreme Court said, "Of importance, the troubling fact that the law imposes severe restrictions on persons who already have served their sentence and are no longer subject to the supervision of the criminal justice system is also not an issue before the Court." *Packingham*, 137 S. Ct. at 1737. Bobal understands this language to mean that the holding of *Packingham* applies to all computer restrictions, regardless of whether the defendant is on supervised release or has completed his sentence.

We disagree. The sentence in question clarified that the Supreme Court decided only whether the North Carolina law violated the First Amendment, not whether the law was unconstitutional for other reasons not raised in the appeal. Nothing in *Packingham* undermines the settled principle that a district court may "impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens" during supervised release. *United States v. Knights*, 534 U.S. 112, 119 (2001). Several of our sister circuits have likewise decided that, even after *Packingham*, a district court does not commit plain error by imposing a restriction on computer usage as a special condition of supervised release. *See United States v. Perrin*, 926 F.3d 1044, 1049–50 (8th Cir. 2019); *United States v. Halverson*, 897 F.3d 645, 658 (5th Cir. 2018); *United States v. Rock*, 863 F.3d 827, 831 (D.C. Cir. 2017).

Bobal urges us to follow the Third Circuit, which reached the opposite conclusion in *United States v. Holena* under an abuse-of-discretion standard. 906 F.3d 288, 290, 295 (3d Cir. 2018). The Third Circuit stated that, "[u]nder *Packingham*, blanket internet restrictions will rarely be tailored enough to pass constitutional muster." *Id.* at 295. And it concluded that "even under *Packingham*'s narrower concurrence," a blanket computer restriction fails because it "precludes access to a large number of websites that are most unlikely to facilitate the commission of a sex crime against a child." *Id.* (internal quotation marks omitted).

*Holena* read the opinions in *Packingham* too broadly. Both the majority opinion and the concurring opinion in *Packingham* agreed that the North Carolina law infringed the First Amendment rights of registered sex offenders, who would be committing an entirely new felony if they accessed certain websites. But neither opinion addressed whether the First Amendment is violated by a special condition of supervised release for a sex offender who is serving a sentence for an offense involving electronic communications sent to a minor.

## IV. CONCLUSION

We **AFFIRM** Bobal's conviction and sentence.

13