[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13829

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

NORMAN JAVIER HERRERA PASTRAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cr-20107-CMA-1

_____

Before Luck, Lagoa, and Julie Carnes, Circuit Judges.

PER CURIAM:

Defendant Norman Herrera Pastran appeals his conviction on one count of producing child pornography in violation of 18 U.S.C. § 2251(a). He also challenges the procedural and substantive reasonableness of his 30-year prison sentence and lifetime term of supervision with computer restrictions. After a careful review of the record and the briefing submitted by the parties, we AFFIRM.

## BACKGROUND

In July 2018, a 12-year-old female ("Minor Victim 1") and an 11-year-old female ("Minor Victim 2") (collectively, the "Minor Victims") told law enforcement that Defendant Herrera Pastran, their uncle, had orally and anally penetrated them with his penis on multiple occasions throughout the past several years and taken photographs of the abuse. Minor Victim 1 also reported that Defendant took the photographs using his "old" cell phone his children used to play games.

On August 6, 2018, a state search warrant was executed at Defendant's Miami residence and digital devices were seized. Defendant's wife subsequently contacted the Miami Dade County State Attorney's Office on October 2, 2018, and reported she had found Defendant's old cell phone. A state search warrant executed on the phone in December 2018 uncovered 47 sexually explicit images that were consistent with the reports of the Minor Victims. Specifically, the phone contained images showing Defendant orally

and anally penetrating Minor Victim 1 with his penis and anally penetrating Minor Victim 2 with his penis. The images were taken on March 17 and 20, 2017, viewed on March 27 and 28, 2017, and deleted sometime thereafter. The phone was manufactured outside of Florida and was thus shipped and transported in interstate commerce before Defendant used it in 2017.

The father of the victims confirmed that they had stayed at Defendant's house from March 17 through March 20, 2017. After reviewing censored versions of the images, the parents identified both Minor Victims as the children in the images. In some of the images, Defendant is wearing blue pants, and Defendant's couch, uniquely patterned rug, and blanket are all visible. The FBI retrieved the pants seen in the images from Defendant's lawyer pursuant to a federal search warrant and obtained a search warrant for Defendant's DNA and photographs of his body. A forensic analysis confirmed that the DNA found on the pants matched Defendant's DNA.

Based on the above facts, Defendant was indicted on two counts of production of child pornography in violation of 18 U.S.C. § 2251(a) and (e), one count for each Minor Victim. He pled guilty to Count 1 in a plea agreement under which the Government agreed to seek the dismissal of Count 2. The probation office prepared a presentence investigation report ("PSR") prior to Defendant's sentencing.

The PSR described the offense conduct set out above, and it also revealed that several years prior to committing those offenses,

Defendant had sexually abused a third victim ("Minor Victim 3"). Minor Victim 3, the 14-year-old sister of Minor Victims 1 and 2, reported that when she was seven, Defendant inserted his fingers into her vagina while he was giving her a bath. The PSR also described additional conduct with respect to Minor Victims 1 and 2. Specifically, on one occasion, Defendant placed his penis in Minor Victim 2's mouth while Minor Victim 1 watched. Defendant then placed his penis into Minor Victim 1's anus as Minor Victim 2 watched. Minor Victim 1 also reported that Defendant showed her pornography and said, "we should do this one day."

The PSR assigned Defendant a base offense level of 32 under USSG § 2G2.1(a). Defendant received a 2-level increase pursuant to § 2G2.1(b)(1)(B) because his offense involved a minor between the ages of twelve and sixteen, a 2-level increase under § 2G2.1(b)(2)(A) because the offense involved the commission of a sexual act, a 2-level increase under § 2G2.1(b)(5) because Defendant was the victim's uncle, and a 5-level increase because he was determined to be a repeat and dangerous sex offender against minors under USSG § 4B1.5(b)(1). After applying a 3-level reduction for acceptance of responsibility, Defendant's total offense level was set at 40. Based on a total offense level of 40 and a criminal history category of I, the PSR calculated Defendant's recommended guidelines range as 292 to 365 months, but because the statutory maximum term of imprisonment for Defendant's offense was 30 years, the PSR set his recommended guidelines range at 292 to 360 months per USSG § 5G1.1(c)(1). The PSR noted that the Government had agreed to seek the dismissal of Count 2, and that

21-13829                Opinion of the Court                5

Defendant's recommended guidelines range would have been life if he had pled guilty to both counts.

In addition to imprisonment, the PSR recommended a supervised release term of five years to life under USSG § 5D1.2(b)(2). Among other special conditions of supervision, the PSR recommended a computer modem restriction and a computer possession restriction. The computer modem restriction stated that "[t]he defendant shall not possess or use a computer that contains an internal, external or wireless modem without the prior approval of the [c]ourt." The computer possession restriction stated that "[t]he defendant shall not possess or use any computer; except that the defendant may, with the prior approval of the [c]ourt, use a computer in connection with authorized employment."

At Defendant's sentencing hearing, the mother of the victims made a victim impact statement describing the harm Defendant's abuse had caused the Minor Victims and the entire family. She stated that "[t]he acts committed against our girls are every parent's worst nightmare." Then she discussed how Defendant's actions had permanently changed her daughters, robbing them of their sense of security and safety. After describing the emotional impact of Defendant's conduct on the family, the mother emphasized the manipulative, calculated nature of Defendant's acts. At the conclusion of her statement, the mother asked the court to sentence Defendant to the maximum sentence of 30 years in prison "so as to not only protect our daughters, but your daughter, your

family and friends' daughters, everyone's daughters, including [Defendant's] own little girl."

The Government subsequently recited the salient facts from the PSR, highlighting that "[t]his case is not based on an isolated incident but repeated abuse of at least three very young girls over an extended period of time." The Government emphasized that the victims could not be made whole and that they would struggle with Defendant's abuse for the rest of their lives. The Government also asserted that Defendant had shown a "deviant sexual interest in children" and "whether [he was] 45 or 65 or 85, he [would] pose a danger to the community for as long as he is alive." For these reasons and based on the 18 U.S.C. § 3553(a) factors—specifically, the nature and circumstances of Defendant's offense and the need for his sentence to promote respect for the law and protect the public—the Government requested the maximum sentence of 30 years in prison, followed by lifetime supervision subject to the special conditions listed in the PSR.

Defendant responded with a request to be sentenced at the bottom of the guidelines range. Defendant emphasized that he was not seeking a variance. Rather, he argued, a low guidelines range sentence accomplished all the objectives of sentencing in his case. Defendant noted further that such a sentence would help him obtain the appropriate medical care for his serious heart condition, which he claimed would require constant attention while in prison. Defendant highlighted his military service of ten years and his

acceptance of responsibility.  Finally, Defendant discussed his own emotional suffering as well as his family's suffering since his arrest.

After acknowledging the arguments made by both parties, the district court expressly considered the relevant § 3553(a) factors, focusing on Defendant's history and characteristics, the need for general and specific deterrence, the need to promote respect for the law, and the nature and circumstances of the offense conduct. As to the latter of these factors, the court stated:

> [H]ow does one describe years and years, from 2011 to 2017, years of a grown man raping little girls in his home? Raping them vaginally, anally and filming them, photographing them.  How does one describe that? How does one describe destroying innocent girls' lives, destroying them and their family's lives?

The court noted that while Defendant might miss his young children and wife, he had lost the right to live in a free society with them or to be in unsupervised contact with his little girls and other little girls.  And ultimately, the court agreed with the Government that "only a high end of the guideline[s] sentence [would] suffice" in Defendant's case due to the "unspeakable" and "[i]ndescribable" acts Defendant had committed.  The court then sentenced Defendant to 30 years in prison as to Count 1, to be followed by a lifetime term of supervised release with the special conditions described above.  The court dismissed Count 2 per the Government's motion.

Defendant objected to the imposition of lifetime supervision for three reasons: (1) he had no prior arrests, (2) his age at the time of his expected release, and (3) his documented family support. He subsequently filed this appeal. In his appellate briefing, Defendant challenges the validity of his conviction under 18 U.S.C. § 2251(a), arguing that § 2251(a) exceeds the power of Congress under the Commerce Clause. Defendant also argues that his sentence is procedurally and substantively unreasonable and that the computer restriction applied in his case is unconstitutional.

## DISCUSSION

### I. Defendant's conviction under 18 U.S.C. § 2251(a) does not violate the Commerce Clause.

Defendant argues on appeal that his conviction for production of child pornography under § 2251(a) is unconstitutional because his case has only a tenuous link to interstate commerce—namely, the device Defendant used to record his sexual abuse traveled in interstate commerce. According to Defendant, Congress can only regulate non-economic criminal activity if that activity substantially affects interstate commerce. Defendant insists that his offense did not meet that requirement because it was purely local. He notes that there is no evidence he used the internet to facilitate his crime or that the images he recorded were related to an online market or otherwise entered the stream of commerce.

This Court ordinarily reviews a constitutional challenge to a conviction *de novo*, but plain error review applies when a defendant raises his constitutional challenge for the first time on appeal, as

21-13829              Opinion of the Court                    9

Defendant has done here. *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010). This standard requires "that there be error, that the error be plain, and that the error affect a substantial right." *United States v. Laines*, 69 F.4th 1221, 1229 (11th Cir. 2023) (citation and quotation marks omitted). If all three requirements are satisfied, the Court may "exercise [its] discretion to notice the forfeited error if the error seriously affects the fairness, integrity, or public reputation" of the judicial proceeding. *Id.* (citation and quotation marks omitted).

An error qualifies as "plain" for purposes of plain error review only if it is clearly established by the "explicit language of a statute or rule" or "precedent from the Supreme Court or this Court." *United States v. Castro*, 455 F.3d 1249, 1253 (11th Cir. 2006) (quotation marks omitted). For the reasons discussed below, there is no such error with respect to the constitutionality of Defendant's conviction under § 2251(a).

> The statute Defendant was convicted of violating states that:
>
> [a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e) . . . if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported

> in or affecting interstate or foreign commerce by any
> means.

18 U.S.C. § 2251(a).  On its face, the statute "requires only that a defendant arrange for a minor to engage in sexually explicit conduct for the purpose of creating a visual depiction, and that there be some nexus to interstate or foreign commerce." *United States v. Ruggiero*, 791 F.3d 1281, 1284–85 (11th Cir. 2015).  In this case, the required nexus was provided by Defendant's use of a device to record the offending images that had been manufactured out of state and transported in interstate commerce.

In *United States v. Maxwell*, 386 F.3d 1042, 1045 (11th Cir. 2004) ("*Maxwell I*"), *vacated*, 546 U.S. 801 (2005), this Court addressed the validity under the Commerce Clause of 18 U.S.C. § 2252A(a)(5)(B), a federal statute criminalizing the possession of child pornography that has been transported using "any means" of interstate commerce. *Maxwell I*, 386 F.3d at 1051.  The Court held that the statute, which contains a similar jurisdictional hook to § 2251(a), violated the Commerce Clause because there was nothing commercial or economic about the intrastate possession of child pornography, even if it had been saved on computer disks imported from out of state and transported in interstate commerce. *Id.* at 1056–61.  In so holding, the Court concluded that the "aggregate approach," which looks beyond the isolated conduct of the defendant and considers the aggregate effect of such possession by others throughout the country, could not apply to Maxwell's conduct that was noneconomic and intrastate in nature. *Id.* at 1059–

60. Doing so, the Court explained, would "essentially vest[] general police powers with the federal government." *Id.*

However, the United State Supreme Court subsequently held in *Gonzales v. Raich*, 545 U.S. 1 (2005), that the Controlled Substances Act ("CSA") did not violate the Commerce Clause as applied to the purely intrastate cultivation of marijuana, holding that "Congress had a rational basis for believing that failure to regulate the intrastate manufacture and possession of marijuana would leave a gaping hole in the CSA." *Raich*, 545 U.S. at 22. Shortly thereafter, the Supreme Court granted certiorari in *Maxwell I*, vacated this Court's decision, and remanded the case for further consideration under *Raich*. *United States v. Maxwell*, 546 U.S. 801 (2005). On remand, this Court concluded there was "very little to distinguish constitutionally Maxwell's claim from Raich's." *United States v. Maxwell*, 446 F.3d 1210, 1216 (11th Cir. 2006) ("*Maxwell II*"). The Court thus held that *Raich* necessarily led to the conclusion that "it is within Congress's authority to regulate *all* intrastate possession of child pornography, not just that which has traveled in interstate commerce." *Id.* at 1218.

After *Maxwell II*, this Court specifically analyzed § 2251(a)'s validity under the Commerce Clause in *United States v. Smith,* 459 F.3d 1276 (11th Cir. 2006). As relevant here, Smith was convicted of one count of producing child pornography in violation of § 2251(a). *Id.* at 1281. His conviction was based on the testimony of a 14-year-old girl who stated that Smith had paid her to take nude photographs in sexually suggestive positions and a search of

Smith's home that uncovered nearly two thousand photos in a lockbox that contained sexually explicit images, many of which depicted "very young girls . . . with a male who [was later] identified as [Smith]." *Id.*

The Government did not attempt to show the images underlying Smith's conviction traveled or were produced with the intent to travel in interstate commerce. *Id.* at 1282. Rather, the Government provided evidence that the photographs were printed and processed using Kodak paper and other equipment manufactured and shipped from out of state. *Id.* Like Defendant, Smith challenged the constitutionality of his conviction on Commerce Clause grounds, raising the issue for the first time on appeal. *See id.* This Court held that, under *Raich* and *Maxwell II*, Smith's appeal failed because he could not establish any error, much less plain error. *Id.* at 1284. Per *Raich* and *Maxwell II*, the Court explained, "Congress may regulate purely intrastate activity, whether economic or not, that could be rationally considered incident to Congress's comprehensive regulation of interstate economic activity." *Id.* Section 2251(a) "is part of [such] a comprehensive regulatory scheme criminalizing the receipt, distribution, sale, production, possession, solicitation and advertisement of child pornography." *Id.* at 1285 (citation and quotation marks omitted). Further, "Congress could have rationally concluded that the inability to regulate intrastate possession and production of child pornography would, in the aggregate, undermine Congress's regulation of the interstate child pornography market." *Id.* As such, Smith's conviction under § 2251(a) did not violate the Commerce Clause. *Id.*

Defendant's argument that his conviction under § 2251(a) violates the Commerce Clause is foreclosed by this Court's decision in *Smith*, which upheld the facial constitutionality of § 2251(a) and sanctioned its application to facts that are materially indistinguishable from the facts of this case for purposes of the Commerce Clause analysis. In *Smith*, the only connection to interstate commerce asserted by the Government was the means used to produce the child pornography: Kodak paper and processing equipment that were manufactured out of state and had traveled in interstate commerce. Similarly, Defendant used a cell phone that was manufactured outside the state of Florida and had traveled in interstate commerce. Thus, per this Court's decision in *Smith*, Defendant cannot show any error in his § 2251(a) conviction under the Commerce Clause, much less plain error. *See also Ruggiero*, 791 F.3d at 1289 ("Our sister circuits have been of one voice in rejecting Commerce Clause challenges to § 2251(a), and we join the chorus.") (footnote omitted); *United States v. Grzybowicz*, 747 F.3d 1296, 1306–07 & n.9 (11th Cir. 2014) (rejecting the defendant's Commerce Clause challenge to his § 2251(a) conviction and reaffirming that the interstate commerce element of such a conviction is "satisfied by proof that the child pornography . . . was produced using materials that had been transported in interstate or foreign commerce").

Defendant argues in his appellate briefing that this Court's holding in *Maxwell II*, which laid the groundwork for *Smith*, was incorrectly decided. According to Defendant, the Commerce Clause requires more of a nexus to interstate commerce than this

Court determined was necessary in *Maxwell II* and *Smith*. But under the prior panel precedent rule, *Smith* and *Maxwell II* are binding on this Court unless and until those cases are overruled or undermined to the point of abrogation by the Supreme Court or by this Court sitting *en banc*. *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). Thus, Defendant's argument is unavailing. *Smith* and *Maxwell II* are controlling, and they are determinative of Defendant's Commerce Clause challenge. As such, we affirm Defendant's conviction under § 2251(a).

## II.    Defendant's sentence is procedurally and substantively reasonable.

Defendant also contends that his 30-year prison sentence and lifetime term of supervision are procedurally and substantively unreasonable. He also argues that the computer restrictions imposed as special conditions of his supervised release must be vacated because they are unconstitutional and not reasonably related to the circumstances of his offense. We are not persuaded by either argument.

### A.    Reasonableness of Defendant's Sentence

We use a two-step process to review the reasonableness of Defendant's sentence. *See United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014). First, we determine whether the sentence is procedurally sound. *See id.* Assuming it is, we then examine whether the sentence is substantively reasonable given the totality of the circumstances and the sentencing factors set out in 18 U.S.C.

§ 3553(a).[1]  *Id.*  At both steps of the process, the party challenging the sentence bears the burden of showing it is unreasonable.  *See United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008).

As to the first step of the process, a sentence is procedurally unreasonable only if the district court commits a "significant procedural error," such as failing to calculate or incorrectly calculating the guidelines range, treating the guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.  *Id.* at 1190.  It is undisputed that the court correctly calculated Defendant's advisory guidelines range, did not treat the guidelines as mandatory in his case, and sentenced him based on facts that were agreed upon by the parties.  Nevertheless, Defendant argues the court procedurally erred because (1) it failed to consider certain mitigating factors—specifically, Defendant's acceptance of responsibility, military service, and health conditions—when it sentenced him to the maximum, 30-year prison sentence

---

[1]  The § 3553(a) factors include:  (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (3) the need for deterrence, (4) the need to protect the public, (5) the need to provide the defendant with needed education or vocational training or medical care, (6) the kinds of sentences available, (7) the sentencing guidelines range, (8) pertinent policy statements of the sentencing commission, (9) the need to avoid unwarranted sentencing disparities, and (10) the need to provide restitution to victims.  18 U.S.C. § 3553(a).

and (2) it did not explain why it decided to impose a lifetime term of supervised release.

Contrary to Defendant's argument, the record reflects the district court's express and careful consideration of the relevant § 3553(a) factors to arrive at a sentence of 30 years in prison plus a lifetime of supervision. The court heard argument from defense counsel as to all the mitigating factors noted above, including Defendant's military service, heart condition, and acceptance of responsibility. It was not required to discuss each of these factors in detail. *See United States v. Kuhlman*, 711 F.3d 1321, 1326 (11th Cir. 2013) (explaining that the sentencing court is required only to set forth enough information to show it has considered the arguments made by the parties and has a reasoned basis for making its decision).

Ultimately, the district court decided that 30 years in prison plus a lifetime of supervision was "sufficient but not greater than necessary to achieve the objectives [of] sentencing" and that any mitigating factors were outweighed by the horrific facts underlying Defendant's offense, which involved "years and years . . . of a grown man raping little girls in his home[.] Raping them vaginally, anally and filming them, photographing them." That decision was well within the court's discretion. *See United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (emphasizing that the "decision about how much weight to assign a particular sentencing factor is committed to the sound discretion of the district court." (quotation marks omitted)).

Nor did the district court fail to explain its decision to impose a lifetime term of supervision or base that decision on improper factors, as Defendant argues. Given the facts underlying Defendant's offense as recited in the PSR and the factual proffer, the Government argued at sentencing that Defendant would "pose a danger to the community for as long as he is alive" because he had a demonstrated "deviant sexual interest in children." The court agreed, stating that Defendant had "lost the right to be in unsupervised contact with [his] little girl, with other little girls" because of his "repeated acts, unspeakable acts, [i]ndescribable acts" to unsuspecting little girls who were members of his family. The court's rationale for sentencing Defendant to a lifetime term of supervision—namely, that such a sentence was necessary to deter and protect the public from Defendant following his incarceration—is thus evident from the record, and no further explanation was required. *See United States v. Hamilton*, 66 F.4th 1267, 1275 (11th Cir. 2023) (affirming a sentence including lifetime supervision and noting that § 3553 does not require the district court to make an additional, separate explanation for the supervised release term). Moreover, it is apparent that the decision was based on legitimate factors, such as deterrence and protecting the public, rather than the retributive considerations of § 3553(a), which are excluded from the factors to be considered when imposing a term of supervised release. *See* 18 U.S.C. § 3583(c) (excluding the seriousness and just punishment factors of § 3553(a) from the supervised release inquiry).

Turning to the second step of the analysis, we review the substantive reasonableness of Defendant's sentence under a

"deferential abuse of discretion standard." *United States v. Early*, 686 F.3d 1219, 1221 (11th Cir. 2012) (citing *Gall v. United States*, 552 U.S. 38 (2007)). Substantive reasonableness is measured based on the "totality of the . . . circumstances" considering the § 3553(a) factors. *See United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010). Generally, a sentence is substantively reasonable unless it "lies outside the range of reasonable sentences dictated by" those circumstances and factors. *Id.* at 1190 (citation and quotation marks omitted). Consequently, Defendant cannot prevail on his substantive reasonableness claim just by showing that a lesser sentence would also be reasonable or may even be more reasonable to some judges. *See id.* at 1191 ("A district court's sentence need not be the most appropriate one, it need only be a reasonable one."). Instead, he must show that the district court (1) failed to consider relevant facts that were due significant weight, (2) gave significant weight to an improper or irrelevant factor, or (3) committed a clear error of judgment in considering the proper factors. *Rosales-Bruno*, 789 F.3d at 1256 (quotation marks omitted).

Defendant does not show any such failure or clear error of judgment here. We note at the outset that his 30-year prison sentence, followed by lifetime supervision, is within the guidelines range. "Although we do not automatically presume a sentence within the guidelines range is reasonable, we ordinarily expect [such] a sentence . . . to be reasonable." *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) (quotation marks omitted).

Furthermore, the record reflects that the district court conducted an individualized assessment of the facts at sentencing and ultimately determined that the maximum sentence of 30 years in prison plus lifetime supervision was necessary and warranted by the specific facts of this case. After expressly listing all the relevant factors, the court determined that only a high end of the guidelines sentence would suffice due to the nature and circumstances of Defendant's offense—specifically, the facts that (1) Defendant sexually abused three young girls who had been entrusted to him by their parents and (2) the abuse was not an isolated incident but rather took place over years and years, and it destroyed the lives of the young victims and their family. Again, the court's emphasis on the nature and circumstances of Defendant's offense was within its discretion, as was its conclusion that a high-end guidelines sentence and lifetime supervision were appropriate given the facts underlying Defendant's offense in this case. *See Ramirez-Gonzalez*, 755 F.3d at 1272–73 ("The weight accorded to each factor [] is a matter committed to the sound discretion of the district court." (quotation marks omitted)).

### B.    Computer Restrictions

We generally review the imposition of special conditions of supervised release for abuse of discretion. *See United States v. Moran*, 573 F.3d 1132, 1137 (11th Cir. 2009). But because Defendant failed to object to the computer restrictions below, plain error review applies. *See United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010). As discussed above, this Court will reverse under plain

error review only if the district court committed a plain error that affected the defendant's substantial rights and that would seriously undermine the fairness or integrity of the proceeding if left uncorrected. *See Laines*, 69 F.4th at 1229. Further, an error can only be plain if the express language of a statute or rule or binding precedent directly resolves the relevant issue in a manner contrary to the district court's ruling. *See Castro*, 455 F.3d at 1253.

As relevant here, the governing statute authorizes a sentencing court to impose any special conditions of supervised release it considers appropriate so long as the conditions (1) are reasonably related to the § 3553(a) sentencing factors, (2) involve no greater deprivation of liberty than is reasonably necessary to achieve the sentencing objectives of § 3553(a), and (3) are consistent with any pertinent policy statements issued by the Sentencing Commission. *See* 18 U.S.C. § 3583(d). The pertinent Sentencing Commission policy statement specifically recommends that the sentencing court impose a special condition "limiting the use of a computer or an interactive computer service in [sex offense] cases in which the defendant used such items." USSG § 5D1.3(d)(7)(B).

The statutes cited above do not clearly resolve the issue whether the district court erred when it imposed the computer restrictions applied to Defendant in this case. Based on its plain language, § 3583(d) authorizes such a condition so long as it is related to the § 3553(a) factors, consistent with any relevant provisions of the sentencing guidelines, and no more restrictive than reasonably necessary. 18 U.S.C. § 3583(d). The district court did not obviously

violate any of those limitations here.  Likewise, USSG § 5D1.3(d)(7) recommends a condition limiting computer use in cases in which the defendant used a computer to commit a sex offense, but it does not preclude such a condition when the defendant has committed a sex offense without the use of a computer.  Indeed, the introductory language of § 5D1.3(d) makes clear that a computer use restriction "may otherwise be appropriate"—in other words, the district court has the discretion to impose such a restriction—in a particular case even if the defendant did not use a computer to commit his offense.  USSG § 5D1.3(d).

Nor have we found any precedent from the Supreme Court or this Court clearly establishing that it was error for the district court to impose the computer restrictions ordered in this case. This Court has on several occasions rejected a sex offender's claim of plain error based on special conditions restricting computer use and internet access during a lifetime term of supervision.  *See United States v. Carpenter*, 803 F.3d 1224, 1239–40 (11th Cir. 2015) (holding that a district court did not plainly err when it imposed a computer restriction as part of a lifetime term of supervised release and emphasizing that such access could enable a sex offender to offend once again); *United States v. Bobal*, 981 F.3d 971, 976 (11th Cir. 2020) ("A district court does not commit plain error by imposing a computer restriction as a special condition of supervised release, even if the term of supervised release is life.").  Noting that it already had upheld a restriction on a sex offender's ability to use the internet as a "necessary and reasonable condition of supervised release" over a three-year period of supervised release, the Court in *Bobal*

concluded that it was not plain error to impose the same type of restriction when the term is life. *Bobal*, 981 F.3d at 976 (citing *United States v. Zinn*, 321 F.3d 1084, 1086, 1093 (11th Cir. 2003)). Like the computer restrictions applied in *Carpenter* and *Bobal*, the restriction here included an exception for Defendant to access the internet and to use a computer in connection with employment with prior court approval.

Defendant argues the Supreme Court's decision in *Packingham v. North Carolina*, 582 U.S. 98 (2017) clearly establishes the district court's error in imposing the computer restrictions at issue here. In *Packingham*, the Supreme Court held that a North Carolina law making it a felony for a registered sex offender to access social media websites, including common sites like Facebook and Twitter, violated the First Amendment. *Id.* at 109. But the Court in *Packingham* emphasized that its opinion "should not be interpreted as barring a State from enacting more specific laws" than the North Carolina statute at issue in that case. *Id.* at 107. And as this Court explained in *Bobal*, *Packingham* is distinguishable for at least two reasons that are specifically applicable here.[2] First, the North

---

[2] *Bobal* also distinguished *Packingham* on a third ground that arguably is relevant here. Specifically, the state law in *Packingham* applied to all registered sex offenders, not only those who used a computer or some other means of electronic communication to commit their offenses. *See Bobal*, 981 F.3d at 977. Defendant used a smartphone, which is an electronic device akin to a computer, to commit the offense in this case, albeit there is less direct of a relationship between the offense conduct and the computer restriction than there was in *Bobal*.

Carolina law at issue in *Packingham* "restricted sex offenders even after they had completed their sentences." *Bobal*, 981 F.3d at 977. Defendant's restriction, "by contrast, is a special condition of his supervised release and does not extend beyond his sentence." *Id.* Second, Defendant's computer restriction "is not a complete bar to the exercise of his First Amendment rights" like the statute in *Packingham*. *Id.* (quotation marks omitted and alterations accepted). "Instead, it allows [Defendant] to obtain court permission" to access the internet or "to use a computer in connection with employment." *Id.* Defendant "can also ask the district court to modify the terms of his supervised release," meaning he is not "without recourse to protect his First Amendment rights." *Id.* Because of these distinctions, *Packingham* does not clearly establish that the district court erred when it imposed the computer restrictions at issue in this case. *See also United States v. Coglianese*, 34 F.4th 1002, 1010 (11th Cir. 2022) (upholding a computer restriction applicable during the defendant's 30-year term of supervised release and noting that, even after *Packingham*, this Court has "uniformly upheld similar restrictions, so long as the defendant . . . has the ability to seek permission from the probation office to use a computer and/or access the internet for specified purposes").

Finally, while computer restrictions like the one imposed in this case are often applied to defendants who used computers or the internet to commit their offenses, that is not always the case. On at least one occasion, this Court has upheld a special condition restricting computer use like the one described in USSG § 5D1.3(d)(7)(B) in a case where the defendant had a history of

sexual battery that did not involve child pornography or the use of electronic devices of any kind. *See Moran*, 573 F.3d at 1136 (upholding a restriction on internet access where the defendant was a sex offender with no history of using the internet, a computer, or any electronic device for his offenses, and where the offense did not involve child pornography). More importantly, Defendant does not cite, and we have not found any precedent that precludes the imposition of such a restriction on the ground that the defendant did not use a computer to commit his offense. As such, reversal is not warranted under the plain error standard. *See Laines*, 69 F.4th at 1229.

## CONCLUSION

For the foregoing reasons, we hold that Defendant's conviction under 18 U.S.C. § 2251(a) does not violate the Commerce Clause, Defendant's 30-year sentence to be followed by a lifetime term of supervised release is procedurally and substantively reasonable, and the district court did not plainly err in imposing computer-possession and computer-modem restrictions as special conditions of Defendant's lifetime term of supervised release. We therefore **AFFIRM**.