**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-10021
Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ANTHONY TYRONE MACKEY,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:23-cr-00137-TJC-MCR-1

————————————

Before JORDAN, KIDD, and ANDERSON, Circuit Judges.

PER CURIAM:

Anthony Mackey appeals his conviction for possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). On appeal, he first argues that the district court

2                    Opinion of the Court                    25-10021

plainly erred in denying his motion for a new trial because the government argued facts not in evidence during closing and rebuttal arguments about his ownership of a backpack containing a pistol and about the weight of the shotgun.  Both the pistol and the shotgun were found in a car that he was driving.  Second, he argues that the court erred in convicting him under § 922(g)(1) because the statute exceeds Congress's authority under the Commerce Clause and violates his Second Amendment rights, in light of *United States v. Rahimi*, 602 U.S. 680 (2024), and *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

## I. DISCUSSION

### A. Improper Remarks by Prosecution

We review a district court's denial of a motion for a new trial under Federal Rule of Criminal Procedure 33 for abuse of discretion.  *United States v. Pulido*, 133 F.4th 1256, 1275 n.15 (11th Cir. 2025).  Rule 33 provides that, on a defendant's motion, a court "may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  We have defined the interest-of-justice standard as "a broad standard" that "is not limited to cases where the district court concludes that its prior ruling, upon which it bases the new trial, was legally erroneous."  *United States v. Vicaria*, 12 F.3d 195, 198 (11th Cir. 1994).  The filing of a motion for a new trial does not cure a defendant's failure to contemporaneously object at trial, and such claims are reviewed for plain error.  *United States v. Bobal*, 981 F.3d 971, 975 (11th Cir. 2020).  To show plain error, the defendant must demonstrate that: (1) an

error occurred; (2) the error was plain; and (3) the error affected his substantial rights. *United States v. Smith*, 459 F.3d 1276, 1283 (11th Cir. 2006). Further, if the first three conditions are met, we may exercise our discretion to notice a forfeited error only if the error seriously affects the fairness or integrity of judicial proceedings. *Id.* An error is not plain unless it is contrary to explicit statutory provisions or controlling precedent from either the Supreme Court or us. *United States v. Schultz*, 565 F.3d 1353, 1357 (11th Cir. 2009).

"To find prosecutorial misconduct, a two-element test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." *United States v. Wilson*, 149 F.3d 1298, 1301 (11th Cir. 1998) (quotations omitted). Moreover, "[a] defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome of the trial would be different." *Id.* (quotation omitted and alterations accepted). "The court makes this determination in the context of the entire trial and in light of any curative instruction." *Id.* (quotation omitted). We consider four factors in determining whether a prosecutor's conduct had a reasonable probability of changing a trial's outcome: (1) whether the challenged comments had a tendency to mislead the jury or prejudice the defendant; (2) whether the comments were isolated or extensive; (3) whether the comments were deliberately or accidentally placed before the jury; and (4) the strength of the competent proof establishing the defendant's guilt. *United States v. Lopez*, 590 F.3d 1238, 1256 (11th Cir. 2009).

Closing argument exists to assist the jury in analyzing the evidence. *United States v. Reeves*, 742 F.3d 487, 505 (11th Cir. 2014). Although a prosecutor may not exceed the evidence presented at trial during his closing argument, he may state conclusions drawn from the trial evidence. *Id.* A prosecutor may urge the jury to draw inferences and conclusions from the evidence presented at trial. *United States v. Rivera*, 780 F.3d 1084, 1100 (11th Cir. 2015). A prosecutor's suggestion or comments are inappropriate if "calculated to mislead or inflame the jury's passions." *United States v. Azmat*, 805 F.3d 1018, 1044 (11th Cir. 2015).

"[B]ecause the statements of counsel are not evidence, the district court may rectify improper prosecutorial statements by instructing the jury that only the evidence in the case is to be considered." *United States v. Jacoby*, 955 F.2d 1527, 1541 (11th Cir. 1992). Furthermore, the jury is presumed to have followed any curative instruction. *Wilson*, 149 F.3d at 1302. "If the district court gave a curative instruction but refused to declare a mistrial . . . we will reverse only if the objected-to testimony was so prejudicial that its harm was incurable." *United States v. Gallardo*, 977 F.3d 1126, 1138 (11th Cir. 2020). "Furthermore, when the record contains sufficient independent evidence of guilt, any error was harmless." *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007).

As an initial matter, Mackey's claim is reviewed for plain error because he did not object at trial to any of the government's statements during its closing argument or rebuttal. *See Bobal*, 981 F.3d at 975.

Here, the government's remarks during closing argument that "[t]his shotgun is big.  It has a presence.  And it is heavy" were not improper.  *See Wilson*, 149 F.3d at 1301.  Rather, these statements were reasonable inferences from the evidence at trial, namely, that the shotgun pictured in Exhibits 1 and 5 looked big and it was, therefore, unlikely that Mackey did not know of its presence in the car's backseat, consistent with Officer Al-Amair's testimony that it was visible.  *See Rivera*, 780 F.3d at 1100.  Similarly, the government's arguments that Mackey owned the backpack, during its closing arguments and rebuttal, were also reasonable inferences based on the car owner's testimony that he did not own a backpack and that no backpack was in the car when he lent it to Mackey, and Officers Al Amair's and Soto Vasquez's testimonies that Mackey was the car's only occupant at the time of the search and his other belongings were in the backseat along with the backpack.  *See Rivera*, 780 F.3d at 1100.

Regardless, the government's statements about the backpack's ownership and the shotgun's weight did not prejudicially affect Mackey's substantial rights because the court instructed the jury prior to deliberation that it could only consider the evidence and that the lawyers' statements were not evidence.  *See Jacoby*, 955 F.2d at 1541.  Moreover, the court answered the jury's questions about the shotgun's weight and the ownership of the backpack by instructing them to rely on the evidence.  Mackey has not cited any cases in support of his argument that the court's curative instruction was insufficient because the jury had asked questions about the evidence, nor has he shown that the government's statements

were so prejudicial that its harm was incurable. *See Gallardo*, 977 F.3d at 1138. Accordingly, we affirm as to this issue.

## B. Constitutionality of § 922(g)(1)

We review *de novo* challenges to the constitutionality of a statute. *United States v. Dubois*, 139 F.4th 887, 890 (11th Cir. 2025) ("*Dubois II*"). We are bound to adhere to our prior-panel precedent unless that precedent has been abrogated by us or by the Supreme Court. *United States v. White*, 837 F.3d 1225, 1228 (11th Cir. 2016). A Supreme Court decision "must be clearly on point" to constitute an overruling for the purposes of the prior-panel-precedent rule. *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) (quotation marks omitted). To abrogate a precedent, the Supreme Court must also "demolish and eviscerate" each of its "fundamental props." *United States v. Lightsey*, 120 F.4th 851, 860 (11th Cir. 2024) (quotation marks omitted). "The prior panel precedent rule applies regardless of whether the later panel believes the prior panel's opinion to be correct, and there is no exception to the rule where the prior panel failed to consider arguments raised before a later panel." *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019) (citation omitted).

The Commerce Clause reads: "The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. We have "clearly held that § 922(g) is constitutional under the Commerce Clause." *United States v. Longoria*, 874 F.3d

1278, 1283 (11th Cir. 2017), *abrogated on other grounds by Erlinger v. United States*, 602 U.S. 821, 849 (2024). We have also rejected as-applied challenges to § 922(g), holding that there is a "minimal nexus" to interstate commerce where the government shows that the firearms at issue were manufactured outside the state where the offense took place and, thus, necessarily traveled in interstate commerce. *United States v. Wright*, 607 F.3d 708, 715-16 (11th Cir. 2010). In *United States v. McAllister*, we explicitly rejected the argument that *Lopez* rendered § 922(g)(1) unconstitutional as applied to a defendant convicted of possessing a firearm as a felon, holding that § 922(g)(1)'s statutory requirement of a connection to interstate commerce was sufficient to satisfy the "minimal nexus" requirement that remained in binding precedent. 77 F.3d 387, 390 (11th Cir. 1996). In *United States v. Scott*, we held that *United States v. Morrison*, 529 U.S. 598, 615-18 (2000) (holding that the Commerce Clause did not provide Congress with authority to enact a civil remedy provision of the Violence Against Women Act because the provision was not one regulating activity substantially affecting interstate commerce), did not abrogate *McAllister* because § 922(g)(1)'s statutorily required connection to interstate commerce "immunizes § 922(g)(1) from Scott's facial constitutional attack." 263 F.3d 1270, 1273 (11th Cir. 2001).

The Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Section 922(g) of Title 18 of the U.S. Code prohibits anyone who has been convicted of a crime punishable by more than

one year of imprisonment from possessing a firearm or ammunition.  18 U.S.C. § 922(g)(1).

In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment right to bear arms presumptively "belongs to all Americans," but "is not unlimited."  554 U.S. 570, 581, 626 (2008).  The Supreme Court noted that, while it "[did] not undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment, nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill."  *Id.* at 626.  The Supreme Court labeled these restrictions as "presumptively lawful."  *Id.* at 627 n.26.  It specifically ruled that the District of Columbia had to allow Heller to carry his handgun in his home "[a]ssuming that Heller [was] not disqualified from the exercise of Second Amendment rights[.]"  *Id.* at 635.

After *Heller*, we held in *United States v. Rozier* that § 922(g)(1) did not violate the Second Amendment, "even if a felon possesses a firearm purely for self-defense."  598 F.3d 768, 770 (11th Cir. 2010).  *Rozier* did not rely on means-end scrutiny to conclude that § 922(g)(1) was constitutional, but instead recognized that prohibiting felons from possessing firearms was a "presumptively lawful longstanding prohibition."  *Id.* at 771 (quotation marks omitted).  We stated that *Heller*'s clarification that it should not be read to cast doubts on prohibitions on possession of firearms by felons "suggest[ed] that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment."  *Id.*  We concluded that Rozier's self-defense purpose, and

25-10021                  Opinion of the Court                         9

keeping the gun in his home, were immaterial because felons as a class could be excluded from firearm possession. *Id.* In a footnote, we rejected Rozier's argument that the statement from *Heller* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons" was merely dicta and should not be afforded authoritative weight. *Id.* at 771 n.6. We reasoned that (1) to the extent that the statement "limit[ed] the Court's opinion to possession of firearms by law-abiding and qualified individuals," it was necessary to the decision reached; and (2) even if the statement were superfluous to *Heller*'s central holding, we would still afford it "considerable weight," as dicta from the Supreme Court is not to be lightly ignored. *Id.*

Several years later, in *Bruen*, the Supreme Court considered a Second Amendment challenge to New York's gun-licensing regime that limited when a law-abiding citizen could obtain a license to carry a firearm outside the home. *See Bruen*, 597 U.S. at 11-13. The Court recognized that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.* at 10. The Court explained that, to determine whether a restriction on firearms was constitutional, courts must begin by asking whether the firearm regulation at issue governs conduct that falls within the plain text of the Second Amendment. *Id.* at 17. If the regulation does cover such conduct, the court may uphold it only if the government "affirmatively prove[s] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. *Bruen* emphasized that *Heller* established the correct test

for determining the constitutionality of gun restrictions. *See id.* at 39 (applying "*Heller*'s text-and-history standard" to the challenged statute). And, like *Heller*, *Bruen* described Second Amendment rights as extending to "law-abiding, responsible citizens . . . for self-defense." *Id.* at 26 (internal quotation marks omitted).

After *Bruen*, in *United States v. Dubois*, 94 F.4th 1284, 1291-93 (11th Cir. 2024) ("*Dubois I*"), *judgment vacated sub nom. Dubois v. United States.*, 145 S. Ct. 1041 (2025), *and reinstated by Dubois II*, 139 F.4th 887, we rejected a defendant's Second Amendment challenge to § 922(g). We held that the challenge was foreclosed by *Rozier*, which "interpreted *Heller* as limiting the [Second Amendment] right to law-abiding and qualified individuals and as clearly excluding felons from those categories by referring to felon-in-possession bans as presumptively lawful." *Id.* at 1293 (quotation marks omitted). Although the defendant argued that *Bruen* abrogated *Rozier*, we observed that, even in *Bruen*, the Supreme Court continued to describe the right to bear arms as extending only to "law-abiding, responsible citizens." *Id.* (internal quotation marks omitted). We also rejected the defendant's argument that *Bruen* abrogated all prior Second Amendment precedent based on a two-step, means-end scrutiny test because *Rozier* was not based on that framework. *Id.* Instead, *Rozier* was based on our understanding that *Heller* limited the Second Amendment's protections "to law-abiding and qualified individuals" and excluded "felons from those categories[.]" *Id.* (quotation marks omitted). Because *Bruen* "repeatedly stated that its decision was faithful to *Heller*," we held that *Bruen* did not abrogate *Rozier* based on *Rozier*'s reliance on *Heller*. *Id.* We

concluded that we were bound by *Rozier* and, because *Rozier* foreclosed a Second Amendment challenge to § 922(g)(1), we affirmed the defendant's conviction. *Id.*

Meanwhile, in *Rahimi*, the Supreme Court considered a Second Amendment challenge to § 922(g)(8), the federal statute prohibiting an individual subject to a domestic-violence restraining order from possessing a firearm when the order includes a finding that he represents a credible threat to the safety of an intimate partner, their child, or an individual. 602 U.S. at 684-85. It held that this firearm restriction was constitutional. *Id.* at 693. It once again declared that prohibitions on "the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" *Id.* at 699 (quoting *Heller*, 554 U.S. at 626-27 n.26). It clarified that it was not suggesting that "the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse." *Id.* at 698. Finally, the Court rejected the government's argument that a person could be disarmed because they were not "responsible," reasoning that the term was vague and was used in *Heller* and *Bruen* simply to describe the class of ordinary citizens who undoubtedly enjoy the Second Amendment right and those cases did not define the term or say anything about the status of citizens who were not "responsible." *Id.* at 701-02.

On January 13, 2025, the U.S. Supreme Court granted certiorari in *Dubois I* and vacated and remanded the case to us for further consideration in light of *Rahimi*. *Dubois*, 145 S. Ct. 1041. On

12                    Opinion of the Court                    25-10021

June 2, 2025, we issued our opinion in *Dubois II* on remand, holding that "*Rahimi*—like . . . *Bruen* . . . —did not abrogate our holding in *Rozier* that section 922(g)(1) is constitutional under the Second Amendment[.]" *Dubois II*, 139 F.4th at 889. Accordingly, we reinstated our prior opinion and affirmed Dubois's convictions and sentence. *Id*. Thus, we reaffirmed the precedential authority of *Rozier* over Second Amendment challenges to § 922(g)(1). *Id*. at 893. We noted that the only time that *Rahimi* mentioned felons was to reiterate *Heller*'s conclusion that prohibiting felons from possessing firearms is presumptively lawful. *Id*. at 892-93. "This endorsement of the underlying basis for our prior holding that section 922(g)(1) does not violate the Second Amendment suggests that *Rahimi* reinforced—not undermined—*Rozier*." *Id*. at 893. We stated that we needed "clearer instruction from the Supreme Court before we may reconsider the constitutionality of section 922(g)(1)." *Id*. Dubois thereafter petitioned us to rehear the case en banc, which we denied.

More recently, we have held that *Rozier* and *Dubois II* continue to foreclose constitutional challenges to § 922(g)(1) as a violation of the Second Amendment pursuant to the prior-panel-precedent rule. *United States v. Hicks* 166 F.4th 933, 939 (11th Cir. 2026).

Here, the district court did not err in convicting Mackey under § 922(g) because our binding precedent in *Rozier* forecloses his Second Amendment challenge to § 922(g), and our binding precedent in *Wright* and *Scott* foreclose his argument that § 922(g) exceeds Congress's authority under the Commerce Clause.

**AFFIRMED.**