[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-12074

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

BLAINE JOYNER COGLIANESE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cr-00263-VMC-TGW-1

_____

Before WILLIAM PRYOR, Chief Judge, JORDAN, Circuit Judge, and BROWN,* District Judge.

JORDAN, Circuit Judge:

Blaine Coglianese appeals his sentence of 168 months' imprisonment followed by 30 years of supervised release, imposed pursuant to his guilty plea for numerous child sex crimes. He challenges the procedural and substantive reasonableness of his bottom-of-the-guidelines sentence, arguing that the district court did not properly consider the 18 U.S.C. § 3553(a) factors. He also contests the imposition of a special condition of supervised release prohibiting him—absent probation office approval—from using or possessing a computer or a device capable of connecting to the internet and from possessing an "electronic data storage medium."

## I

Mr. Coglianese was 22 years old when he met 14-year-old J.G. on a dating site. They exchanged photos for weeks before going to his residence. The first time they engaged in sexual activity, Mr. Coglianese believed J.G. was 18. By the second time they saw each other, Mr. Coglianese knew her true age. Undeterred, he continued eliciting nude photos of J.G. and sending her photos of himself via Facebook messenger. Around the same time, Mr. Coglianese began chatting with various Tumblr users

---

* Honorable Michael L. Brown, United States District Judge for the Northern District of Georgia, sitting by designation.

about his relationship with a 14-year-old.  He sent some of those users photos of J.G. in exchange for other child pornography.

The government charged Mr. Coglianese with coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b); receipt of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1); and transportation of child pornography, in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1).  Mr. Coglianese ultimately pled guilty to all charges without a plea agreement.

Given the offenses to which Mr. Coglianese pled guilty, and his criminal history category of I, the advisory guidelines range was 168 to 210 months of imprisonment followed by five years to life of supervised release.  The presentence investigation report did not reveal any factors that would warrant a departure or variance from the applicable sentencing range.

At the sentencing hearing, the government recommended a sentence of 210 months at the high end of the guidelines range.  Mr. Coglianese requested a term of 144 months.  He argued that various factors warranted a downward variance from the sentencing guidelines, including the low number of pornographic images involved, the lack of predatory behavior, his untreated mental illness (major depressive disorder and attention deficit hyperactivity disorder), his cooperation with law enforcement, and his low likelihood of recidivism.  During the hearing, the district court discussed two principal concerns: (1) the government's request for a high-end sentence; and (2) the fact that Mr. Coglianese knew J.G. when he shared photos of her with others.

The district court asked defense counsel to address the government's request for a sentence at the high end of the guideline range, which was unusual given that Mr. Coglianese had pled guilty to all of the charges.  The court noted that the prosecutor assigned to the case was highly respected and did not typically request high-end sentences as a matter of course.  The court explained that it usually gave less weight to recommendations from prosecutors who requested the high end of the guidelines in "every case."  *See* D.E. 85 at 46.  When, as here, the request came from a prosecutor who was known to consider the circumstances of each defendant before making a sentencing recommendation, the court considered the recommendation differently.  *See id.*

With respect to the parties' sentencing recommendations, the district court said that it was considering a sentence at the low end of the guidelines as opposed to a high-end sentence or a downward variance.  Although the downward variance Mr. Coglianese requested was modest, the court was hesitant to grant it because of the nature of his relationship with J.G.  *See id.* at 44–45.  Unlike other child pornography cases, Mr. Coglianese knew his victim.  And Mr. Coglianese had further victimized J.G. by sharing nude photos of her with others after having cultivated a relationship with her.  *See id.* at 45.

The district court ultimately sentenced Mr. Coglianese to 168 months in prison—the low end of the sentencing guidelines range—followed by 30 years of supervised release.  The terms of

supervised release included a special condition barring Mr. Coglianese from using or possessing a computer or a device capable of connecting to the internet without prior approval from the probation office. The special condition also prohibited him from possessing an "electronic data storage medium, including a flash drive, [a] compact disk, a floppy disk, or any other data encryption technique or program." D.E. 85 at 63. *See also* D.E. 74 at 5 (judgment containing nearly identical language).[1]

In explaining the sentence, the district court said it had considered all of the sentencing factors under 18 U.S.C. § 3553(a). The court emphasized the importance of punishment, deterrence, and protecting the public, and explained it had weighed the statutory factors against the "compelling circumstances" Mr. Coglianese presented before arriving at the sentence.

At the end of the hearing, Mr. Coglianese objected "to the procedural and substantive reasonableness of the sentence, both as applied to the imprisonment and, in particular, to the computer term and the length of the term of the supervised release." D.E. 85 at 67. This appeal followed.

---

[1] The presentence investigation report recommended a special condition imposing "computer/internet restrictions" but did not provide any specific proposed language. *See* PSR at 19, ¶ 151. The recommendation did not include any reference to "electronic data storage medium/media" or propose any restriction on the use or possession of such materials.

## II

Generally, we review the reasonableness of a sentence for abuse of discretion. *See United States v. Irey*, 612 F.3d 1160, 1186 (11th Cir. 2010) (en banc) (citing *Gall v. United States*, 552 U.S. 38, 46 (2007)). "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Id.* at 1189 (citation omitted).

We typically also review the validity of special conditions of supervised release for abuse of discretion. *See United States v. Moran,* 573 F.3d 1132, 1137 (11th Cir. 2009). But if the defendant fails to properly state his objection in the district court, we conduct plain error review. *See United States v. Zinn,* 321 F.3d 1084, 1087 (11th Cir. 2003).

## III

Mr. Coglianese argues that his 168-month sentence is procedurally unreasonable because the district court relied on factors outside those delineated in 18 U.S.C. § 3553(a), failed to consider his expert witness' testimony, and did not fully explain the reasons for the sentence. He also contends that his sentence was substantively unreasonable because it was greater than necessary under § 3553(a).

## A

We first consider whether the district court committed any procedural errors.  *See Gall*, 552 U.S. at 51.  As relevant here, a court errs by "failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence."  *Id.* at 51.[2]

Although a district court must consider all of the applicable § 3553(a) factors in arriving at an appropriate sentence, it need not give all of the factors equal weight.  *See, e.g., United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009).  The court "is permitted to attach 'great weight' to one factor over others."  *Id.* (quoting *Gall*, 552 U.S. at 57).

Here, the district court stated that it had considered the advisory guidelines and "all of the factors" set out in § 3553(a)(1)–(7).  *See* D.E. 85 at 65–66.  It is true, as Mr. Coglianese points out, that the court specified that it looked at punishment, deterrence, and protecting the public.  *See id.* at 57.  But reliance on some § 3553(a) factors over others does not necessarily render a sentence unreasonable.  *See, e.g., United States v. Pugh*, 515 F.3d 1179, 1192 (11th Cir. 2008).  Nor does the failure to discuss every factor.  *See United States v. Kuhlman*, 711 F.3d 1321, 1326–27 (11th Cir. 2013).  For example, we have upheld a sentence as procedurally

---

[2] A court also commits procedural error by failing to calculate or miscalculating the guidelines range or by treating the guidelines as mandatory, *see Gall*, 552 U.S. at 51, but Mr. Coglianese does not assert any such errors.

reasonable despite a statement from the district court that some of the § 3553(a) factors "predominated" because the court had also stated that it had considered the parties' arguments and all of the factors. *See United States v. Shabazz*, 887 F.3d 1204, 1224–25 (11th Cir. 2018).

Reviewing the record as a whole, we conclude that the district court considered the parties' arguments and all of the § 3553(a) factors.    The court listened to the evidence and arguments on the issue of Mr. Coglianese's mental health—a fact that is apparent from the requirement that he participate in a mental health program, as requested by his counsel. *See* D.E. 85 at 61.  The record demonstrates that the court was familiar with the facts of the case, took into account the evidence presented, and imposed a sentence that was tailored to Mr. Coglianese's circumstances and conduct.

The district court explained that, although it heard and considered Mr. Coglianese's "compelling circumstances" in mitigation—including his expert witness' testimony as to mental health issues—it nonetheless determined that a downward variance was not justified. *See* D.E. 85 at 66–67.  In support of its determination, the court reiterated its concern that Mr. Coglianese knew J.G. when he sent nude photos of her to others. *See id.* at 66. In this case, the court's explanation was legally sufficient.

Finally, the district court's statement that the prosecutor was highly respected did not constitute error or affect the sentence imposed.  The court rejected the prosecutor's recommendation for

20-12074                Opinion of the Court                9

a high-end guidelines sentence and imposed a low-end sentence. Thus, the court's comments did not render Mr. Coglianese's sentence procedurally unreasonable. *See Shabazz*, 887 F.3d at 1224–25.

## B

We next address whether Mr. Coglianese's sentence is substantively reasonable. *See Gall*, 552 U.S. at 51. In conducting our review, we consider the totality of the circumstances. *See id.* Mr. Coglianese, as the party opposing the sentence, bears the burden of showing that it is "unreasonable in light of the record and the [§] 3553(a) factors." *Shabazz*, 887 F.3d at 1224 (internal quotation marks omitted).

A sentence is unreasonable "only if we are left with the definite and firm conviction that the district court committed a clear error of judgment . . . arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Id.* (citation omitted). Though we do not apply a presumption of reasonableness to a sentence within the guidelines range, we ordinarily expect such a sentence to be reasonable. *See, e.g., United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014). A sentence below the statutory maximum can also be indicative of reasonableness. *See, e.g., United States v. Dougherty*, 754 F.3d 1353, 1364 (11th Cir. 2014).

Mr. Coglianese enticed a minor, had sex with her despite knowing her age, and then traded nude photos of her. The

advisory guidelines placed him at a range of 168 to 210 months of imprisonment followed by five years to life of supervised release.

The district court imposed the lowest possible prison sentence within the range, 168 months, and it was within the court's discretion to weigh the § 3553(a) factors as it did and arrive at this sentence. *See Shabazz*, 887 F.3d at 1224. First, the low-end nature of the sentence, which is below the statutory maximum, is indicative of the reasonableness. *See Dougherty*, 754 F.3d at 1364. Second, we have upheld similar sentences for defendants convicted of enticement and child pornography offenses. *See United States v. Nagel*, 835 F.3d 1371, 1372, 1376–77 (11th Cir. 2016) (upholding a 292-month sentence, at the bottom of the guidelines range, for a defendant convicted of enticement of a minor); *United States v. Cubero*, 754 F.3d 888, 892, 901 (11th Cir. 2014) (upholding a 151-month sentence following the defendant's guilty plea to one count of possession of child pornography and two counts of possession of child pornography); *United States v. Brown*, 772 F.3d 1262, 1267–68 (11th Cir. 2014) (upholding a 240-month sentence, which was "well above the applicable [g]uidelines range of 78 to 97 months," for a defendant who pled guilty to possession and receipt of child pornography).

## IV

We now turn to the district court's imposition of the special condition of supervised release barring Mr. Coglianese from accessing computers and the internet, and from possessing any "electronic data storage medium," without prior approval from the

probation office.  Mr. Coglianese argues that this special condition is unreasonable and overly broad.  He contends that it amounts a "blanket ban[ ]" that deprives him of his liberty more than is reasonably necessary and is tantamount to banishment from modern society.  *See* Appellant's Br. at 13–14.

## A

The government asserts that Mr. Coglianese's objection to "the computer term" was too broad to apprise the district court of his challenge.  Therefore, the government contends, plain error governs our review of the conditions of supervised release.  We disagree.

An objection to a condition of supervised release is properly preserved when it "articulate[s] the specific nature of [the defendant's] objection . . . so that the district court may reasonably have an opportunity to consider it."  *Zinn*, 321 F.3d at 1090 n.7.  The defendant must raise the objection "in such clear and simple language that the [district] court may not misunderstand it."  *United States v. Riggs,* 967 F.2d 561, 565 (11th Cir. 1992).  A sweeping, general objection is therefore insufficient.  *See United States v. Carpenter*, 803 F.3d 1224, 1238 (11th Cir. 2015).

Mr. Coglianese objected "in particular" to "the computer term."  *See* D.E. 85 at 67.  Given the offenses Mr. Coglianese pled guilty to, and the recommendation contained in the presentence investigation report, that objection was sufficient to put the district court on notice that he was contesting the special condition

regarding computers and internet access. That condition encompassed various restrictions, including the ban on computer and internet use as well as the ban on possessing an "electronic data storage medium." Mr. Coglianese's objection went beyond a generalized statement about the sentence, and pointed out the particular special condition with which he took issue. Because Mr. Coglianese properly preserved his objection, we review the special condition of supervised release for abuse of discretion. *See Zinn*, 321 F.3d at 1089 (defense counsel's statement that polygraph testimony "is not a proper condition" of supervised release, "though perhaps imprecise, adequately conveyed the nature of [the] objection so as to preserve it for appeal"). *Cf. Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020) (When a defendant requests a shorter sentence, a sentencing court understands that the defendant is asserting that the requested sentence is sufficient and that a longer sentence is greater than necessary: "Nothing more is needed to preserve a claim that a longer sentence is unreasonable.").

Although some conditions of supervised release are statutorily prescribed, *see* 18 U.S.C. § 3583, a district court has discretion to impose "any condition of supervised release it deems appropriate so long as it comports with the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Tome*, 611 F.3d 1371, 1375 (11th Cir. 2010). To be valid, a condition must (1) be "reasonably related" to a § 3553(a) factor; (2) "involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth" in

§ 3553(a); and (3) be "consistent with any pertinent policy statements issued by the Sentencing Commission." *Zinn*, 321 F.3d at 1089 (quoting U.S.S.G. § 5D1.3(b)).

A condition of supervised release should not unduly restrict a defendant's liberty, but "a condition is not invalid simply because it affects a [defendant's] ability to exercise constitutionally protected rights." *Id.* *See also United States v. Bobal*, 981 F.3d 971, 977 (11th Cir. 2020) ("[A] district court may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens during supervised release.") (internal quotation marks and citation omitted). The district court "must consider the history and characteristics of the defendant, provide both adequate punishment and rehabilitation of the defendant, and protect society at large." *Moran*, 573 F.3d at 1139.

Mr. Coglianese challenges the restrictions on his use of computers and the internet. His crimes, however, involved the use of a computer, and for such offenses the guidelines expressly recommend a condition limiting computer access. *See* U.S.S.G. § 5D1.3(d)(7)(B).

We have uniformly upheld similar restrictions, so long as the defendant—like Mr. Coglianese here—has the ability to seek permission from the probation office to use a computer and/or access the internet for specified purposes. *See, e.g., Zinn*, 321 F.3d at 1093; *Carpenter*, 803 F.3d at 1239. In *Zinn*, we recognized the value and prevalence of the internet in society but held that because of the "strong link between child pornography and the

20-12074                Opinion of the Court                14

[i]nternet, and the need to protect the public, particularly children, from sex offenders," a restriction on internet use was reasonable. *See* 321 F.3d at 1092–93. *See also Moran*, 573 F.3d at 1140 ("Although the internet provides valuable resources for information and communication, it also serves as a dangerous forum in which an offender can freely access child pornography and communicate with potential victims.").

Mr. Coglianese attempts to distinguish our prior decisions by arguing that when those cases were decided smart phones, tablets, and other technology we depend on today had not yet been invented. This argument falls short in the face of more recent decisions upholding restrictions on the use of computers and internet. Indeed, in 2015, well after the advent of the iPhone, we upheld a lifetime ban on internet use without prior approval from the probation office. *See Carpenter*, 803 F.3d at 1239 (defendant convicted of possessing child pornography). *See also Bobal*, 981 F.3d at 973, 976–78 (holding that a lifetime ban on a sex offender's computer usage was not unconstitutional because the "computer restriction [did] not extend beyond his term of supervised release, it [was] tailored to his offense, and [the defendant could] obtain the district court's approval to use a computer for permissible reasons").

To recap, Mr. Coglianese used at least three different internet sites to entice a minor and to disseminate and receive pornographic images of minors. The internet, therefore, was the means by which he committed his crimes. It was within the district

court's discretion to impose restrictions on Mr. Coglianese's use of computers and internet during his term of supervised release. Significantly, the court did not impose an absolute ban; it expressly permitted Mr. Coglianese to obtain approval from the probation office to use computers and the internet for legitimate purposes. On this record, there was no abuse of discretion.

**B**

That leaves the district court's restriction on the possession of "electronic data storage medi[a]." The court prohibited Mr. Coglianese from "possessing an electronic data storage medium, including a flash drive, [a] compact disk, a floppy disk, or any other data encryption technique or program." D.E. 85 at 65, D.E. 74 at 5. Like the restriction on using computers and the internet, this was not a flat-out ban, as Mr. Coglianese was allowed to seek the permission of the probation office to possess these materials. The court explained that "if approved to possess or use a device [Mr. Coglianese] must permit routine inspection of the device." D.E. 74 at 5.

Mr. Coglianese argues that this restriction goes "far beyond a reasonably necessary deprivation of liberty." Appellant's Br. at 14. More particularly, he asserts that it is overly inclusive and prohibits him from owning or possessing a mobile phone, a modern microwave oven, a modern television, a home alarm system, and many thermostats and digital alarm clocks because all of these items could conceivably be "electronic data storage media" under a very broad construction of that term. *See id.* at 18–19.

The relevant statute, 18 U.S.C. § 3583(d), provides that a district court may order a sex offender to submit his property, including his "computer, other electronic communications or data storage devices or media" to search at any time. The guidelines also recommend certain special conditions for cases involving sex offenses. Among those listed is a condition requiring the defendant to submit to a search at any time of his computer or "other electronic communication or data storage devices or media." U.S.S.G. § 5D1.3(d)(7)(C). But the term "electronic data storage medium"—the term used by the district court—does not appear in either Title 18 or the guidelines.

A district court has discretion to impose "any condition it deems necessary so long as it comports with the statutory requirements." *Tome*, 611 F.3d at 1375. Yet the condition must be sufficiently specific to provide the defendant with "adequate notice of prohibited conduct when there is a commonsense understanding of what activities the categories encompass." *United States v. Taylor*, 338 F.3d 1280, 1286 (11th Cir. 2003) (quoting *United States v. Paul*, 274 F.3d 155, 167 (5th Cir. 2001)).

Absent a statutory or guidelines definition of the term "electronic data storage medium," we try to discern its ordinary meaning. *See, e.g., United States v. Dominguez*, 997 F.3d 1121, 1124 (11th Cir. 2021) (using various dictionaries to define the term "sexual activity" because the relevant statute failed to provide a definition). Because there do not appear to be any dictionary definitions for the term "electronic data storage medium," we turn

to the meanings of each word comprising the term. *See Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 964–65 (11th Cir. 2016) (defining the various words comprising a term/phrase to discern its meaning).

The word "electronic," as an adjective, means "[u]sing the electronic transmission or storage of information, as by television or computer." 1 Shorter Oxford Eng. Dictionary 804 (5th ed. 2002). *See also* Webster's Third New Int'l Dictionary, Unabridged 84a (2002 & Addenda) ("Implemented on or by means of a computer: involving a computer."). "Data" is defined as "[n]umerical or other information represented in a form suitable for processing by computer." Am. Heritage Dictionary of the Eng. Language 463 (4th ed. 2009). *See also* McGraw-Hill Dictionary of Sci. & Tech. Terms 548 (6th ed. 2003) ("General term for numbers, letters, symbols, and analog quantities that serve as input for computer processing."). "Storage," in a computing context, means "[t]he retention of data and instructions in a device from which they can be retrieved as needed; the part of a memory or other device in which data are stored." 2 Shorter Oxford Eng. Dictionary at 3045. *See also* McGraw-Hill Dictionary of Sci. & Tech. Terms at 2038 ("Any device that can accept, retain, and read back one or more times; the means of storing data may be chemical, electrical, magnetic, mechanical, or sonic."). "Medium" is defined as "[s]omething (as a magnetic disk) on which information may be stored." Webster's Third New Int'l Dictionary at 106a. *See also* McGraw-Hill Dictionary of Sci. & Tech. Terms at 1303 ("The

material, or configuration thereof, on which data are recorded; usually not applied to disk, drum, or core, but to storable, removable media, such as paper tape, cards, and magnetic tape.").

Some of these words have been defined in combination with one another. For example, "storage medium" means "[a]ny device or recording medium into which data can be copied and held until some later time, and from which the entire original date can be obtained." McGraw-Hill Dictionary of Sci. & Tech. Terms at 2039. *See also* Microsoft, Comput. Dictionary 499 (5th ed. 2002) (defining "storage media" as "[t]he various types of physical material on which data bits are written and stored, such as floppy disks, hard disks, tape, and optical disks").[3]

Taking all of these definitions together, we understand an "electronic data storage medium" to be a device—such as a flash drive, magnetic disk, floppy disk, hard disk, tape, or optical disk— that can store and transmit information in a form suitable for processing by a computer. Reading the term in context—as we must—the special condition imposed by the district court is sufficiently clear to put Mr. Coglianese on notice of the types of media or devices that he is prohibited from possessing without probation office approval. *See In re Failla*, 838 F.3d 1170, 1176 (11th Cir. 2016) ("Context is a primary determinant of meaning.")

---

[3] Media is the plural of medium. *See* Am. Heritage Dictionary of the Eng. Language at 1090.

(quoting Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 167 (2012)).

The district court used the term "electronic data storage medium" when discussing the specific items that Mr. Coglianese was prohibited from possessing or using during his term of supervised release. The term was mentioned following the restriction on the use of computers or the internet and as part of the same special condition, which demonstrates that the term is related to the use of computers and/or technology. Indeed, Mr. Coglianese's own objection to the special condition reflects an understanding that the restrictions all pertain to the use (or non-use) of computers and related items (e.g., the internet and devices capable of storing computer-based information). *See* D.E. 85 at 67 (objecting to the special condition as "the computer term"). To the extent that there was any doubt, the court provided a list of examples, stating that the prohibited items included "a flash drive, [a] compact disk, [and] a floppy disk." D.E. 85 at 65. That list is consistent with our understanding of the restriction.

The term "electronic data storage medium" is not overly inclusive and does not impose a greater deprivation of liberty than necessary. Mr. Coglianese committed sexual crimes, largely through his use of computers and related technology. For example, he stored child pornography images of J.G. and distributed them to others via the internet. In sum, he used devices capable of storing and transmitting computer-based or digital information in the commission of the offenses to which he pled

guilty. As such, the district court's restriction on his possession of "electronic data storage medi[a]" during the term of his supervised release was tailored to his offenses and did not constitute an abuse of discretion.

We also note that there was no blanket ban; the district court gave Mr. Coglianese the opportunity to seek permission from the probation office to use an "electronic data storage medium" for legitimate purposes. The special condition begins with the words "[w]ithout prior written approval of the probation officer" and later says "[i]f approved to possess or use a device." D.E. 74 at 5.[4]

## V

We affirm Mr. Coglianese's sentence.

**AFFIRMED.**

---

[4] If the state of technology changes while Mr. Coglianese is incarcerated such that the special conditions of supervised release need modification, he can ask the district court for such relief. *See* 18 U.S.C. § 3583(e)(2); Fed. R. Crim. P. 32.1(a).