[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10566

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

WILLIE M. BURKS, III,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:19-cr-00344-MHT-JTA-1

_____

Before JORDAN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Willie M. Burks, III, a former supervisory correctional officer, appeals his conviction and sentence of 108 months' imprisonment for his failure to intervene to protect an inmate against another officer's excessive use of force, in violation of 18 U.S.C. § 242. As to his conviction, he argues that he intervened to stop the assault and, alternatively, that there was insufficient evidence for a jury to find that he did not intervene. With respect to his sentence, he argues that the district court procedurally erred when it applied the Sentencing Guideline provision for aggravated assault because (1) he was not the person who assaulted the inmate, and (2) the government did not prove that he conspired with the officer who did. He also argues that his sentence was substantively unreasonable given the less severe sentences meted out to his co-defendants and because the district court did not properly consider the 18 U.S.C § 3553(a) factors. After a review of the parties' briefs and the record, we affirm.

**I**

This case arises from a criminal civil rights prosecution involving a correctional officer's assault of two inmates at Elmore Correctional Facility in Elmore, Alabama. The incident took place on February 16, 2019, after Officer Leon Williams escorted inmates Cortney Rolley and Chris Hampton to the shift office to report them for attempting to bring contraband into the facility. Inside

the shift office and on duty that day were Lieutenant Burks, Sergeant Ulysses Oliver, and Correctional Officer Bryanna Mosley. Lieutenant Burks was the shift commander in charge and was responsible for overseeing the officers and the inmates' well-being. At Lieutenant Burks' trial, video evidence and witness testimony described what happened.

Once inside the shift office, Officer Williams explained to the other officers that he witnessed Mr. Rolley and Mr. Hampton jumping the gate in the visitor's yard and attempting to bring in contraband. Sergeant Oliver and Officer Williams then left the shift office to review the security footage while Lieutenant Burks stayed behind with the inmates. Lieutenant Burks handcuffed Mr. Rolley and Mr. Hampton with their hands behind their backs and placed them in a holding room directly across from the shift office.

After a few minutes had passed, Sergeant Oliver and Officer Williams returned to the shift office. Sergeant Oliver, having confirmed Officer Williams' report, became enraged. Video evidence showed that he retrieved the keys for the holding room, entered the room, and grabbed Mr. Rolley and shoved him out into the hallway. While in view of Officers Williams and Mosley, Sergeant Oliver proceeded to strike Mr. Rolley multiple times with his fists and his baton. He then brought out Mr. Hampton and did the same thing to him. This time, Lieutenant Burks watched, just a few feet away, as he stood in the hallway.

Video evidence also showed that after Sergeant Oliver assaulted Mr. Hampton and Mr. Rolley, Lieutenant Burks followed

the inmates back into the holding room.  Sergeant Oliver then aggressively pushed his baton into Mr. Hampton's face, while Lieutenant Burks again only watched and failed to intervene.

In each incident, the inmates were compliant, did not resist, and posed no threat to Sergeant Oliver or others nearby.  The assaults left Mr. Rolley and Mr. Hampton with significant injuries.

The government subsequently brought criminal civil rights charges under 18 U.S.C. § 242 against Sergeant Oliver as the aggressor, and against the other officers for their failure to intervene.  Sergeant Oliver and Officers Williams and Mosley were separately charged with two counts of deprivation of rights under color of law for their roles in the assault, and Lieutenant Burks was charged with one count of deprivation of rights under color of law for his failure to intervene in the assault of Mr. Hampton.[1]

All of the officers, except Lieutenant Burks, pled guilty to the charges.  The district court sentenced Sergeant Oliver to 30 months in prison, and Officers Williams and Mosley each to one year of probation.

After a five-day trial, the jury found Lieutenant Burks guilty. At sentencing, the district court adopted the presentence investigation report—which calculated an offense level of 31 and a criminal

---

[1] Lieutenant Burks was inside the shift office with the door open when Sergeant Oliver assaulted Mr. Rolley in the adjacent hallway.  The government, however, did not charge Lieutenant Burks for failing to intervene in the assault on Mr. Rolley.

history category of I—and sentenced Lieutenant Burks to 108 months in prison, at the bottom of the advisory guideline range of 108 to 120 months.

## II

We review Lieutenant Burks' challenge to the sufficiency of the evidence *de novo*, viewing the evidence, including all reasonable inferences, and resolving credibility determinations in the light most favorable to the jury's verdict. *See United States v. White*, 663 F.3d 1207, 1213 (11th Cir. 2011). We will not overturn a guilty verdict "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Rodriguez*, 732 F.3d 1299, 1303 (11th Cir. 2013).

### A

To obtain a conviction under 18 U.S.C. § 242, the government had to prove that Lieutenant Burks acted willfully and under color of law to deprive Mr. Hampton of rights protected by the Constitution or laws of the United States—here, his Eighth Amendment right to be free from cruel and unusual punishment. *See United States v. Brown*, 934 F.3d 1278, 1294 (11th Cir. 2019). Several cases have held that an officer who is in a position to intervene against another officer's excessive use of force, but fails to do so, is liable under § 242. *See, e.g., United States v. Reese*, 2 F.3d 870, 890 (9th Cir. 1993); *United States v. Serrata*, 425 F.3d 886, 907 (10th Cir. 2005);

*United States v. Pagan-Ferrer*, 736 F.3d 573, 593 (1st Cir. 2013).  Lieutenant Burks does not take issue with this proposition.[2]

Here the critical issue is whether the government presented sufficient evidence to prove beyond a reasonable doubt that Lieutenant Burks willfully chose not to intervene to stop Sergeant Oliver's unconstitutional assault on Mr. Hampton, despite being able to do so.  Viewing the evidence in the light most favorable to the jury's verdict, we conclude that it did.

At trial, the government presented video evidence that showed Lieutenant Burks standing just arms-length away while watching Sergeant Oliver strike Mr. Hampton several times with his baton.  He is seen merely shuffling his feet, and at no point does he attempt to intervene in the assault.  And though the video contained no audio, Sergeant Oliver and Officers Williams and Mosley testified that Lieutenant Burks never gave Sergeant Oliver a verbal command to stop.  All three witnesses testified that Lieutenant Burks seemed to condone the attack by stating "it's fair" as Sergeant Oliver continued to assault Mr. Hampton in front of him. video evidence also showed that, after the two beatings in the hallway had occurred, Lieutenant Burks looked on as Sergeant Oliver shoved his baton in Mr. Hampton's face.  He again did not intervene and again stated "it's fair."

---

[2] Lieutenant Burks argues that he did not use a dangerous weapon or personally assault Mr. Hampton.  But these arguments are unavailing because he was convicted under a failure-to-intervene theory. He does not argue against that theory on appeal, but instead challenges the sufficiency of the evidence.

**B**

Lieutenant Burks first asserts that he in fact intervened by telling Sergeant Oliver to stop.  In support, he relies on his own testimony at trial, a written report by Sergeant Oliver stating that Lieutenant Burks told him to stop, and the testimony of Training Officer Lieutenant Reginald Amber that a command to stop constitutes a form of intervention.  But contrary to Lieutenant Burks' suggestion, this evidence does not conclusively show that he intervened.

The government at trial did not dispute that a command to stop would have been a form of intervention, but instead argued that Lieutenant Burks never gave such a command.  On this record, whether or not Lieutenant Burks intervened by telling Sergeant Oliver to stop was a credibility determination within "the exclusive province of the jury." *United States v. Parrado*, 911 F.2d 1567, 1571 (11th Cir. 1990).  Although Lieutenant Burks testified at trial that he told Sergeant Oliver to stop and that, shortly thereafter, Sergeant Oliver stopped assaulting Mr. Hampton, the jury was not required to credit his testimony, as the eyewitness testimony of three officers contradicted his version of the events.  Moreover, Sergeant Oliver testified at trial that the statement that he made in his written report—that Lieutenant Burks had commanded him to stop assaulting Mr. Hampton—was false.  He explained that he had written this statement only because Lieutenant Burks told him to do so, and not because he actually heard Lieutenant Burks tell him to stop.

Of course, the jury *could* have believed Lieutenant Burks' testimony over that of the other officers. Or it could have credited Sergeant Oliver's report. But it did not do so, and we cannot disturb its credibility choices.

Lieutenant Burks next maintains that there was "an overwhelming amount of [r]easonable [d]oubt as to whether [he] intervened," which should have resulted in a not guilty verdict. *See* Appellant's Br. at 20. But the evidence that Lieutenant Burks points to at best suggests that the jury *could* have decided the case another way.

First, Lieutenant Burks argues that, because the video evidence shows his jaw moving during the assault of Mr. Hampton, "it is likely he told [Sergeant] Oliver to stop." *See id.* Again, although a jury could have drawn this inference, it was not required to do so—it was "free to choose between the . . . reasonable conclusions drawn from the evidence." *Rodriguez*, 732 F.3d at 1303. The government presented sufficient evidence for a jury to reasonably conclude that Lieutenant Burks did not command Sergeant Oliver to stop and instead only stated "it's fair." As we have said many times, the government's evidence did not need to "exclude every reasonable hypothesis of innocence." *United States v. Iriele*, 977 F.3d 1155, 1168 (11th Cir. 2020).

Second, Lieutenant Burks asserts that all three officers "changed" their testimony in the hopes of either getting a plea deal or enhancing their plea deals. In doing so, he impliedly charges that their testimony at trial was false. We will disturb credibility

determinations only where the testimony is "incredible as a matter of law." *United States* v. *Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009). Here the officers' testimony was not incredible as a matter of law. *See id.* (providing that testimony is incredible as a matter of law if it relates to "facts that the witness could not have possibly observed or events that could not have occurred under the laws of nature"). Moreover, the officers' prior inconsistent statements and their status as cooperating witnesses were made known to the jury, which "was entitled to weigh their testimony accordingly." *Id.* We therefore defer any conflicts in the evidence "to the jury's resolution of the weight of the evidence and the credibility of the witnesses." *United States v. Cochran*, 683 F.3d 1314, 1322 (11th Cir. 2012) (internal quotation marks and citation omitted).

Lieutenant Burks' remaining arguments also lack merit. He claims that the evidence showed (1) that "there was no written protocol" for how to respond to an officer assaulting another inmate; (2) that he had a "back condition" that prevented him from physically intervening; (3) that the other officers had a separate duty to intervene; (4) that officers Williams and Mosley testified that if they had intervened, "none of the officers would have been in trouble;" (5) that if he had known about Sergeant Oliver's anger issues, he would have reassigned his duties "to avoid inmate contact;" and (6) that he was "shocked" to see Sergeant Oliver's reaction, which "may have delayed his intervention." *See* Appellant's Br. at 21–23. But none of this evidence negates the fact that he had the duty and opportunity to intervene and that the video evidence and

corroborating witness testimony supported the government's contention that he knew he had an obligation to intervene and chose not to.

In sum, we conclude that the evidence at trial was sufficient to prove beyond a reasonable doubt that Lieutenant Burks violated 18 U.S.C. § 242 by willfully choosing not to intervene in Sergeant Oliver's assault of Mr. Hampton.

### III

Next, we address Lieutenant Burks' sentencing arguments. We review the district court's interpretation and application of the sentencing guidelines *de novo*, and review findings of fact for clear error. *See United States v. Tejas*, 868 F.3d 1242, 1244 (11th Cir. 2017).

We review the procedural and substantive reasonableness of a sentence for abuse of discretion. In doing so, we consider the totality of the circumstances. *See Gall* v. *United States*, 552 U.S. 38, 51 (2007); *United States v. Oudomsine*, 57 F.4th 1262, 1264 (11th Cir. 2023). "We ordinarily expect a sentence within the [advisory] Guidelines range to be reasonable," so Lieutenant Burks bears the burden of showing that his sentence is unreasonable in light of the record and the 18 U.S.C. § 3553(a) factors. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). A district court abuses its discretion and imposes a substantively unreasonable sentence when it "(1) fails to afford consideration to relevant [§ 3553(a)] factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*,

612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (internal quotation marks and citation omitted). We will vacate a defendant's sentence as substantively unreasonable only if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Goldman*, 953 F.3d 1213, 1222 (11th Cir. 2020) (internal quotation marks omitted).

## A

Lieutenant Burks argues that the district court incorrectly applied the base offense level of 14 for aggravated assault because he was not the one who assaulted Mr. Hampton and there was no finding that he conspired with Sergeant Oliver about the assault. His reading of the Sentencing Guidelines is mistaken.

The provision applicable to offenses involving individual rights, U.S.S.G § 2H1.1(a), requires a district court, when determining a defendant's base offense level, to apply the greatest of: "(1) the offense level from the offense guideline applicable to any underlying offense; (2) 12, if the offense involved two or more participants; (3) 10, if the offense involved (A) the use or threat of force against a person; or (B) property damage or the threat of property damage; or (4) 6, otherwise." The base offense level for aggravated assault is 14. *See* U.S.S.G. § 2A2.2. The issue here, then, is whether the district court correctly considered the "underlying offense" to be aggravated assault.

The commentary to § 2H1.1 explains that the "offense

guideline applicable to any underlying offense" means "the offense guideline applicable to any conduct established by the offense of conviction that constitutes an offense under federal, state, or local law." *See* § 2H1.1, cmt. n.1. Under the Sentencing Guidelines, relevant conduct includes "all acts and omission committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A).

At sentencing, the district court independently found that, when failing to intervene in the assault of Mr. Hampton, Lieutenant Burks also "condon[ed]" and "encouraged" the assault by stating "[i]t's fair." *See* D.E. 217 at 17. Lieutenant Burks' inaction, moreover, did not constitute "passive watching" because he was "a supervisor who stood there, said it was 'fair,' did nothing, [and] encourage[d]" Sergeant Oliver "to beat" Mr. Hampton. *See id.* As a result, the district court found that "he should be held accountable [for the] assault." *Id.*

Given the district court's findings—which we find were not clearly erroneous in light of the video evidence and witness testimony presented at trial—we conclude that the district court applied the correct underlying offense—aggravated assault. Sergeant Oliver's use of his baton to assault Mr. Hampton constituted an aggravated assault. *See* U.S.S.G. § 2A2.2, cmt. n.1. (defining aggravated assault, in part, as "a felonious assault that involved . . . a dangerous weapon with intent to cause bodily injury with that weapon"); U.S.S.G. § 1B1.1 n.1(E)(i) (defining a "dangerous weapon," in relevant part, to mean "an instrument capable of

22-10566              Opinion of the Court                    13

inflicting death or serious bodily injury").

Under the Sentencing Guidelines, Lieutenant Burks was accountable for aiding and abetting the assault of Mr. Hampton. *See* U.S.S.G. § 1B1.3(a)(1)(A). The video evidence and witness testimony amply support the finding that he stood by and encouraged Sergeant Oliver to assault Mr. Hampton by stating "it's fair," instead of intervening to stop the assault. His failure to intervene and encouragement of Sergeant Oliver's acts therefore helped further the underlying aggravated assault. *See* U.S.S.G. § 2H1.1, cmt. n.1. That Lieutenant Burks did not personally assault Mr. Hampton, and that he was not charged with conspiring with Sergeant Oliver, are of no consequence for purposes of determining his base offense level in this case. *See, e.g., United States v. Serrata*, 425 F.3d 886, 907 (10th Cir. 2005) (affirming district court's use of aggravated assault as underlying offense in guidelines calculation in a § 242 failure-to-intervene case).[3]

**B**

---

[3] Relying on the commentary to U.S.S.G. § 2H1.1, Lieutenant Burks argues that a district court may only substitute an underlying offense where a defendant "acted in conspiracy with the person who committed the underlying offense." Appellant's Br. at 24 (citing § 2H1.1, cmt. n.1). But that is not the case. The commentary simply provides that in cases where there is more than one underlying offense, the base offense level may be calculated by "determine[ing] the underlying offenses encompassed within the count of conviction *as if* the defendant had been charged with a conspiracy to commit multiple offenses." § 2H1.1, cmt. n.1 (emphasis added).

Lieutenant Burks next argues that his sentence was substantively unreasonable because the district court subjected him to a "trial penalty." *See* Appellant's Br. at 24. In support, he points out that the district court was "harsh[er]" in imposing his sentence than it was with Sergeant Oliver (sentenced to 30 months in prison) and Officers Williams and Mosely (each sentenced to one year of probation). *See id.* at 25. At the end of the day, we are unpersuaded.

Generally, a disparity in sentencing among co-defendants is "not an appropriate basis for relief on appeal." *United States v. Cavallo*, 790 F.3d 1202, 1237 (11th Cir. 2015) (internal quotation marks and citation omitted). This is especially true where, as here, the defendants are not similarly situated. *See id.*

Unlike Lieutenant Burks, Sergeant Oliver and Officers Williams and Mosley pled guilty and received acceptance of responsibility adjustments. They also cooperated with the government by testifying at trial. We have explained that a defendant who cooperates with the government and pleads guilty is not similarly situated to a defendant who provides no assistance to the government and proceeds to go to trial. *See id. See also United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009) ("Although the district court is required to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, 18 U.S.C. § 3553(a)(6), the other [cooperating] defendants who received less severe sentences were not similarly situated.") (internal quotation marks omitted). The same is true even when

the cooperating defendants receive a "substantially shorter" sentence. *See Cavallo*, 790 F.3d at 1237; *Docampo*, 573 F.3d at 1101.

Moreover, Lieutenant Burks' argument that the district court penalized him for going to trial is unpersuasive. First, the district court imposed a two-level obstruction enhancement on Lieutenant Burks for testifying falsely at trial, and this enhancement—along with the lack of an acceptance of responsibility adjustment—partly explain the different sentences. Second, the district court sentenced him at the bottom of his advisory guideline range. A sentence at the bottom of the advisory guideline range is generally indicative of reasonableness. *See United States v. Coglianese*, 34 F.4th 1002, 1009 (11th Cir. 2022). Lieutenant Burks has not met his burden of showing otherwise.

Lastly, Lieutenant Burk maintains that the district court improperly considered the § 3553(a) factors. But in so arguing, he has not shown that the district court failed to consider relevant factors that were due significant weight, gave significant weight to improper factors, or otherwise committed a clear error of judgment in considering the proper factors. *See Irey*, 612 F.3d at 1189. Instead, he simply reviews the factors and notes that each should have mitigated in his favor. Essentially, he asks us to re-weigh the § 3553(a) factors ourselves. We will not do so.

The weight a district court chooses to give any given factor in determining a defendant's sentence is generally within its discretion, and we will not substitute its judgment with our own. *See United States v. Alvarado*, 808 F.3d 474, 496 (11th Cir. 2015). We are

satisfied here that the district court considered the § 3553(a) factors when it fashioned Lieutenant Burks' sentence.

At sentencing, the district court stated that it had "considered and consulted" the advisory guidelines and Lieutenant Burks' arguments, and that it had "evaluated the reasonableness of [the] sentence through the lens of [§] 3553[.]" *See* D.E. 217 at 61–62. It also noted that, in imposing Lieutenant Burks' sentence, it found that the sentence was "sufficient but not greater than necessary to comply with the [§ 3553(a) factors]." *Id.* at 62. We have held that "[a]n acknowledgment [that] the district court has considered the defendant's arguments and the § 3553(a) factors will suffice" to show that the district court did just that. *See Gonzalez*, 550 F.3d at 1324. Lieutenant Burks has failed to convince us that we should not take the district court at its word.

## IV

We affirm Lieutenant Burks' conviction and sentence.

**AFFIRMED.**