**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-12052

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

AMAURY RODRIGUEZ,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:09-cr-20608-KMM-1

_____

Before ROSENBAUM, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Amaury Rodriguez appeals his 24-month imprisonment sentence followed by a life term of supervised release imposed upon revocation of his supervised release.  He argues that the district

court violated his right to confrontation by relying on hearsay evidence and failing to properly conduct the balancing inquiry prescribed by our decision in *United States v. Frazier*, 26 F.3d 110 (11th Cir. 1994). He also argues that court otherwise clearly erred in sustaining nearly all the alleged violations. Lastly, he maintains that the imposition of a special condition restricting his computer and modem usage without prior court approval is unconstitutional as an infringement of his First Amendment rights.

## I.

In 2009, Rodriguez pled guilty to distributing child pornography. The district court sentenced him to 72 months of imprisonment followed by 84 months of supervised release. He began his term of supervised release in May 2016.

Rodriguez's supervised release was subject to various conditions. He was required to notify his probation officer of any change in residence or employment, and to receive permission from the probation officer or the court before leaving the Southern District of Florida. He had to undergo mental-health and sex-offender treatment. He was ordered to comply with the federal Sex Offender Registration and Notification Act ("SORNA"), and to not commit any other crime. And he was prohibited from possessing or using any computer or modem without prior court approval.

### A.

In June 2016, the probation office filed a petition alleging that Rodriguez had violated the terms of his supervised release. In

May 2018, the court approved a joint stipulation dismissing the petition and modifying the terms of his supervision.

In June 2021, Rodriguez moved to modify the terms of supervised release, arguing that the prohibition on "any online activity [was] overly restrictive." Meanwhile, the probation office petitioned the court to revoke his supervised release.

Eventually, in January 2023, the district revoked Rodriguez's supervised release based on his admission that he had violated a condition of supervision. The court sentenced him to time served and imposed a new five-year term of supervised release, subject to the same conditions as previously imposed.

*B.*

In May 2023, just a few months after Rodriguez was sentenced upon revocation, the probation office again petitioned for revocation of Rodriguez's supervised release. A superseding petition alleged ten violations, including that Rodriguez: (a) traveled to Arkansas from Florida and changed his residence without notifying his probation officer (Violations 5, 6); (b) failed to register as a sex offender under Florida, Arkansas, and federal law (Violations 1, 2, 3, 10); (c) violated Arkansas law by obstructing governmental operations (Violation 4); (d) failed to participate in mental health and sex offender treatment programs (Violations 7, 8); and (e) possessed or used a computer containing a modem (Violation 9). A magistrate judge held an evidentiary hearing on the alleged violations in November 2023.

The probation officer testified that Rodriguez was not at home during an unannounced visit on May 4, 2023, and that neither his family members nor his treatment providers knew his whereabouts. In the days that followed, the probation officer learned from Rodriguez's father that he had found Rodriguez's cell phone in the recycle bin. The probation officer also received notice from Rodriguez's sex-offender-treatment provider that Rodriguez missed an appointment on or around May 8. Rodriguez did not request permission from the probation officer to leave the Southern District of Florida.

Then, in June 2023, the probation officer received notice via a law-enforcement system that Rodriguez was being looked up by a police department in Elm Springs, Arkansas. The probation officer spoke with the chief of police, who advised that a person named Amaury Rodriguez was in his jurisdiction and using the alias "Roay Ramirez." The police chief also forwarded two emails that had been sent from the same email address, "roay.ramirez@gmail.com," on June 6 and June 7, to a rabbi in Arkansas. In the June 6 email, the sender identified his "real name" as "Amaury Luis Rodriguez." Rodriguez was arrested in Arkansas on June 15, 2023.

In addition, the probation officer identified Rodriguez as the speaker on a recorded jail phone call to his mother. On the call, Rodriguez said he was "here in Arkansas now" because he "didn't want to be home, and because [he] didn't want probation." He told

his mother to look him up on various social media platforms under the name, "Roay Ramirez."

Finally, the government presented evidence that Rodriguez failed to comply with sex-offender registration requirements under Arkansas, Florida, and federal law. As part of its showing, the government offered affidavits from records custodians in each state, who certified that they had conducted a diligent search and could not locate relevant records. The government also offered a set of certified documents from the Florida records custodian containing Florida registration forms filled out by Rodriguez.

Rodriguez objected to the admission of hearsay under *Frazier*, which requires courts in revocation proceedings to "balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation." 26 F.3d at 114. He asserted that he had a right to cross-examine the records custodians and that the government had not offered a reason to deny confrontation. The government responded that the documents were facially reliable and fell under recognized hearsay exceptions, and that having the custodians appear for testimony was too costly to justify. Rodriguez lodged a similar objection about hearsay in the probation officer's testimony about Rodriguez's failure to participate in required treatment.

*C.*

After the hearing, the magistrate judge issued a report and recommendation ("R&R"). With regard to Rodriguez's confrontation arguments, the magistrate judge found that, on balance, the

6                          Opinion of the Court                    24-12052

interests of justice did not require the appearance of either the records custodians or Rodriguez's treatment providers. The magistrate judge otherwise recommended that Rodriguez be found guilty of every violation alleged in the superseding petition except for Violation 4 (obstruction of governmental operations under Arkansas law). The district court entered an order overruling Rodriguez's timely objections, adopting the R&R, and finding Rodriguez guilty of every alleged violation except for Violation 4.

Then, at a later hearing, the district court revoked Rodriguez's term of supervised release and imposed a 24-month imprisonment sentence followed by a life term of supervised release, subject to "all previous conditions." Rodriguez objected to the computer-use special conditions in light of *Packingham v. North Carolina*, 582 U.S. 98, 108 (2017), as well as the substantive reasonableness of his sentence. Rodriguez now timely appeals.

**II.**

We generally review a district court's decision to revoke supervised release for abuse of discretion. *Frazier*, 26 F.3d at 112. Likewise, we review preserved challenges to evidentiary rulings, as well as those to the substantive or procedural reasonableness of a sentence, for an abuse of discretion. *See United States v. Diamond*, 102 F.4th 1347, 1353 (11th Cir. 2024); *United States v. Mazarky*, 499 F.3d 1246, 1248 (11th Cir. 2007).

We are bound by a district court's findings of fact unless they are clearly erroneous. *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993). A factual finding is clearly erroneous when, upon

review of the evidence, we are left with a definite and firm conviction that a mistake has been made. *United States v. Rodriguez*, 75 F.4th 1231, 1241 (11th Cir. 2023).

A district court may revoke a term of supervised release "upon a finding by a preponderance of the evidence that the defendant violated a condition of his supervised release." *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir. 2010) (quotation marks omitted). A preponderance of the evidence is evidence which is more convincing than the evidence offered in opposition to it. *United States v. Watkins*, 10 F.4th 1179, 1184 (11th Cir. 2021) (*en banc*). Even if a defendant's hypothesis is "supported by some modicum of evidence," the fact-finder is "free to choose between or among the reasonable conclusions to be drawn from the evidence presented." *United States v. Williams*, 865 F.3d 1328, 1345–46 (11th Cir. 2017) (quotation marks omitted).

### A. *Violations 1, 2, 3 & 10 (Failure to Register)*

Violations 1, 2, 3, and 10 all relate to Rodriguez's failure to register as a sex offender. Rodriguez maintains that the district court violated his due-process rights by failing to engage in the proper *Frazier* balancing test and by admitting hearsay evidence from the records custodians, and that the government failed to prove he met the residency requirements under the various sex-offender registration laws. We address each issue in turn.

#### 1. Due Process

Revocation proceedings are "conducted without the evidentiary formalities that characterize a criminal trial." *United States v.*

*Penn*, 721 F.2d 762, 764 (11th Cir. 1983); *see United States v. Reese*, 775 F.3d 1327, 1329 (11th Cir. 2015) ("[T]he Sixth Amendment does not apply in hearings for the revocation of supervised release, probation, or parole."). The Federal Rules of Evidence do not apply in supervised-release revocation proceedings, so hearsay evidence is not prohibited. *Frazier*, 26 F.3d at 114; *see* Fed. R. Crim. P. 32.1.

Even so, revocation defendants are entitled to certain "minimal due process requirements." *Frazier*, 26 F.3d at 114. So when deciding whether to admit hearsay evidence against a defendant in a revocation proceeding, "the court must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation." *Id*. The hearsay also "must be reliable." *Id*. Thus, a district court "may consider hearsay evidence as long as the defendant has an opportunity to refute it and the evidence bears a minimal indicia of reliability." *United States v. Hall*, 965 F.3d 1281, 1294 (11th Cir. 2020) (cleaned up).

In *United States v. Penn*, we explained that the "difficulty and expense of procuring live witnesses" for a revocation proceeding may justify use of "conventional substitutes for hearsay: affidavits, depositions and documentary evidence," which tend to bear sufficient "indicia of reliability." 721 F.2d 762, 765 (11th Cir. 1983). In *Penn*, the defendant asserted the right to confront the individuals who performed laboratory urinalysis testing. But the defendant did "not deny, and did not controvert in any way, the charge that he had had illegal drugs in his body on the specific occasions alleged." *Id*. at 766. We held that, "[i]n the absence of any evidence tending

to contradict Penn's drug usage or the accuracy of the lab tests, his confrontation rights were not infringed by the admission of the [hearsay] testimony or the exhibits," given their "reliability." *Id.*

Even if the district court improperly denies confrontation, the defendant is not automatically entitled to relief. Rather, "the defendant bears the burden of showing" two things: "(1) that the challenged evidence is materially false or unreliable, and (2) that it actually served as the basis for the sentence." *United States v. Taylor*, 931 F.2d 842, 847 (11th Cir. 1991); *see United States v. Reme*, 738 F.2d 1156, 1167 (11th Cir. 1984) ("The hearsay evidence relied on at sentencing must bear minimal indicia of reliability if the defendant's right to due process is to be preserved.").

Here, Rodriguez has not shown that the district court reversibly erred. For starters, we are not persuaded that the court failed to conduct the requisite balancing inquiry or weighed the interests unreasonably. The court properly considered the reliability of the hearsay evidence when balancing Rodriguez's interest in confronting the records custodians against the burden and expense of presenting the witnesses. *See Penn*, 721 F.2d at 765. The court explained that each affiant described with adequate specificity "their use of a database to search electronic data, as well as conducting a manual search of records," and that Rodriguez failed to make any showing that the searches were improper or that potential cross-examination would "undermine the evidentiary value of the affidavits."

But even assuming without deciding Rodriguez is correct that the district court failed to properly conduct the balancing inquiry, he bears the burden on appeal to show "that the challenged evidence is materially false or unreliable." *Taylor*, 931 F.2d at 847. And he does not even attempt to do so.

Instead, Rodriguez argues that *Frazier* places the burden of proving harmlessness on the government. But as he notes, "*Taylor* was issued before *Frazier*," so *Taylor* would control over *Frazier* to the extent of any conflict between the two decisions. *See United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008) ("Under the prior precedent rule, we are bound to follow a prior binding precedent unless and until it is overruled by this court *en banc* or by the Supreme Court.") (quotation marks omitted). And to be clear, we do not think the decisions are in conflict.

For these reasons, Rodriguez has not shown that the district court reversibly erred by admitting hearsay from the state records custodians. *See Taylor*, 931 F.2d at 848; *Penn*, 721 F.2d at 765–66.

### 2. Merits

Florida law requires a sex offender to notify appropriate authorities at least 48 hours before he intends to leave Florida "to establish a permanent, temporary, or transient residence in another state or jurisdiction," Fla. Stat. § 943.0435(7), and makes failure to comply a third-degree felony, *id.* § 943.0435(9)(a). A "transient residence" is where a person "lives, remains, or is located for a period of three or more days." Fla. Stat. § 775.21(*o*). Arkansas law requires a sex offender to register as such with appropriate authorities

within five days after moving to Arkansas, Ark. Code § 12-12-906(a)(2)(A)(i), and makes failure to comply a class C felony, *id.* § 12-12-904(a)(1)(A)(i). Finally, SORNA requires a sex offender to register in each jurisdiction where the offender resides and keep all registrations current, and to notify a jurisdiction involved within three days of any change of residence, 34 U.S.C. § 20913(a), (c), and makes failure to comply a felony, 18 U.S.C. § 2250(a).[1]

The district court did not clearly err in finding that Rodriguez failed to comply with Arkansas, Florida, and federal sex-offender registration laws. The probation officer testified that Rodriguez left his home in Florida on or before May 4, 2023, that he did not return, and that he was later arrested in Arkansas on June 15, 2023. The record also supports findings that Rodriguez sent two emails to a rabbi in Arkansas on June 6 and 7, 2023, and that he told his mother on a jail phone call that he was "here in Arkansas now" because he "didn't want to be home, and because [he] didn't want probation." The court reasonably inferred from this evidence that Rodriguez left Florida with the intent to reside out of state, and

---

[1] As Rodriguez notes, Violation 10 of the superseding petition alleged that he violated the conditions of his release by failing to abide by SORNA, which it identified as under "42 U.S.C. § 1690, *et seq.*" That citation is wrong for two reasons. First, SORNA previously started at 42 U.S.C. § 16901. And second, SORNA has been reclassified under Title 34. *See* 34 U.S.C. §§ 20901–20916. Despite that error, Rodriguez does not suggest he lacked adequate notice of the alleged violation or an opportunity to put on a defense, and he does not otherwise identify a basis for dismissal of Violation 10.

that he was present in Arkansas for more than five days and intended to reside there.  *See Williams*, 865 F.3d at 1345–46.

Thus, the district court properly found that Rodriguez's conduct triggered his reporting obligations under the respective sex-offender registration statutes.  *See* Fla. Stat. § 943.0435(7); Ark. Code Ann. § 12-12-906(a)(2)(A)(i); 34 U.S.C. § 20913.  And evidence from the state records custodians showed that Rodriguez failed to submit any registration forms reflecting that change in residence. The district court properly sustained Violations 1, 2, 3, and 10.

### B.  *Violation 5 (Failure to Notify Probation)*

The district court did not clearly err in finding that Rodriguez violated the conditions of his supervision by failing to notify his probation officer of his change in residence.  As we just explained, Rodriguez's conduct and statements support a reasonable inference that he left Florida and intended to reside in Arkansas.

### C.  *Violations 7 & 8 (Failure to Participate in Treatment)*

We agree with Rodriguez that the district court clearly erred in finding that he violated the conditions of his supervised release by failing to participate in required treatment.

The probation officer testified that he spoke with Rodriguez's mental-health and sex-offender-treatment providers in attempting to locate Rodriguez, and that Rodriguez was not present at either treatment center.  The probation officer also received information from a treatment provider that Rodriguez missed an ap-

pointment for sex-offender treatment on May 8, as alleged in Violation 8.  As the government concedes, however, there was no competent evidence that Rodriguez missed an appointment for mental-health treatment on May 5, as alleged in Violation 7.

Because the district court's finding on Violation 7 lacks the support of reliable and specific evidence in the record, it is clearly erroneous.  *See United States v. Washington*, 714 F.3d 1358, 1361 (11th Cir. 2013) (the government "has the burden of introducing 'sufficient and reliable' evidence to prove the necessary facts by a preponderance of the evidence").  The same is true for the court's finding on Violation 8, although for slightly different reasons.

Violation 8 was supported by hearsay statements from Rodriguez's sex-offender-treatment provider, who told the probation officer that Rodriguez missed an appointment on May 8.  Yet in response to Rodriguez's objections under *Frazier*, the district court found that the treatment provider was not required to appear because Violation 8 "relied on [the probation officer's] own conduct, rather than the hearsay testimony."  In other words, the reason the district court denied confrontation was that Violation 8 was supported by non-hearsay evidence.  Similarly, the government argues that the provider statements merely helped explain the probation officer's investigation, so they were *not* offered for the truth of the matter asserted.  *See, e.g., United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015) ("Hearsay is a statement, other than one made by a declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted.").

But the problem is that Violation 8 cannot be sustained on this record unless the provider statements were admitted at least in part for hearsay purposes. If the provider statements were not admitted for their truth—that is, that Rodriguez in fact failed to attend a treatment appointment on May 8—then no competent evidence supports a finding that Rodriguez failed to attend required sex-offender treatment. The mere fact that Rodriguez spoke with the treatment providers and could not locate Rodriguez is not enough, as the government concedes with respect to Violation 7. We therefore vacate the district court's findings that Rodriguez committed Violations 7 and 8.

### D. Violation 9 (Use of a Computer/Modem)

Finally, the district court reasonably concluded that Rodriguez violated the conditions of his supervision by using a computer and modem. The government presented evidence that Rodriguez, after leaving supervision in Florida, sent two emails on June 6 and 7, and that he told his mother to look up his social media activity on various platforms. It's reasonable to conclude from this evidence that Rodriguez personally sent the emails and otherwise used an internet-connected computer. That the evidence may support other possibilities is not enough to show that the district court clearly erred. *See Williams*, 865 F.3d at 1345–46.

### III.

Finally, Rodriguez argues that two special conditions of his supervised release broadly prohibiting his use of a computer or

modem are unconstitutional in light of his life term and the Supreme Court's decision in *Packingham*.

We generally review the imposition of special conditions of supervised release for abuse of discretion. *United States v. Coglianese*, 34 F.4th 1002, 1007 (11th Cir. 2022).

When a defendant is convicted of a sex offense involving a computer, the Sentencing Guidelines recommend the imposition of a special condition limiting the defendant's usage of computers. U.S.S.G. § 5D1.3(b)(3)(G)(ii). We have "uniformly" upheld this restriction so long as the defendant can seek permission to use a computer or access the internet for specific purposes. *Coglianese*, 34 F.4th at 1010. We have affirmed a 30-year term of supervised release with a computer restriction on abuse-of-discretion review when it contained a prior-authorization clause. *Id.* at 1010–1011. We have also affirmed a life term of supervised release with a computer restriction on plain-error review when it contained such a clause. *United States v. Bobal*, 981 F.3d 971, 975–77 (11th Cir. 2020).

In *Packingham v. North Carolina*, the Supreme Court declared unconstitutional a North Carolina law that prohibited a registered sex offender from "access[ing] a commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages." 582 U.S. 98, 101 (2017).

We have found that *Packingham* did not affect the routine computer restriction imposed as a condition of federal supervised

release.  *Bobal*, 981 F.3d at 977.  We distinguished the North Carolina law from the special conditions, observing that the former restricted sex offenders even after they had completed their sentences, applied uniformly to all sex offenders regardless of the method of their underlying offense, and contained no exception for prior approval from the state.  *Id.*  We thus concluded that broad computer restrictions survive *Packingham* as special conditions of federal supervised release so long as they have prior approval procedures.  *Id.*; *Coglianese*, 34 F.4th at 1010.

Rodriguez acknowledges that "his argument is foreclosed by circuit precedent," and he seeks to preserve the issue for further review.  Accordingly, we affirm the imposition of these conditions without further discussion.

## IV.

In sum, we affirm the district court's findings that Rodriguez violated the terms of his supervised release by changing residence without notifying either his probation officer or complying with sex-offender registration requirements (Violation 1, 2, 3, 5, & 10), and by using an internet-connected computer (Violation 9).  Rodriguez also does not dispute that he left the district without informing his probation officer (Violation 6).  We vacate the court's findings that Rodriguez failed to participate in mental-health and sex-offender treatment (Violations 7 & 8).

Accordingly, we vacate Rodriguez's sentence and remand for resentencing without consideration of Violations 7 & 8.  *See United States v. Fowler*, 749 F.3d 1010, 1015 (11th Cir. 2014) (stating

that, "when a conviction on one or more of the component counts is vacated for good, the district court should be free to reconstruct the sentencing package . . . to ensure that the overall sentence remains consistent with the guidelines [and] the § 3553(a) factors").

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**